**Wayne J. GAVIN; Pennsylvania Board of Probation and Parole, Respondent.**

No. 185 EM 2013.

Supreme Court of Pennsylvania.

Jan. 28, 2014.

### ORDER

PER CURIAM.

**AND NOW,** this 28th day of January, 2014, the Application for Leave to File Original Process is **GRANTED,** and the Petition for Writ of Habeas Corpus is **DE-NIED.**

**COMMONWEALTH of Pennsylvania, Respondent**

v.

**Tyrone WIGGINS, Petitioners.**

No. 184 EM 2013.

Supreme Court of Pennsylvania.

Jan. 28, 2014.

### ORDER

PER CURIAM.

**AND NOW,** this 28th day of January, 2014, the Petition for Leave to File Petition for Allowance of Appeal *Nunc Pro Tunc* is **GRANTED.** Counsel is directed to file a Petition for Allowance of Appeal *Nunc Pro Tunc* within 30 days of this order.

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Edward E. STEWART, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 16, 2013.
Filed Dec. 10, 2013.

Suzan E. Wilcox, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Janis Smarro, Philadelphia, for appellee.

BEFORE: BENDER, P.J., FORD ELLIOTT, P.J.E., BOWES, PANELLA, DONOHUE, SHOGAN, LAZARUS, OLSON, and WECHT, JJ.

OPINION BY BOWES, J.:

The Commonwealth appeals from the order granting Edward E. Stewart a new trial after he timely filed his first post-

conviction relief petition pursuant to the Post–Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. After careful review, we affirm.

Appellee and Alvin Hooper, Jr. operated a speakeasy in the basement of a row home in Philadelphia. According to Hooper, on April 7, 2006, both men and Kevin Bing were at the speakeasy, drinking, laughing, and discussing the military. During the course of the day, Hooper fell asleep, although he indicated that he was only slightly intoxicated and not drunk. He then heard a pop and looked up. Hooper, who said he was six to eight feet from Bing, stated that he saw Bing fall to the floor and Appellee with a gun pointed in Hooper's direction. Appellee asked Hooper whether Hooper intended to report Appellee. When Hooper responded in the negative, Appellee asked him to help him roll the body into a carpet. After Hooper declined, Appellee told him to go home and dispose of his clothing. Hooper left the speakeasy and telephoned Omar Taylor, a police officer and Hooper's friend. In contrast to his trial testimony, Hooper told Taylor that he saw Appellee grab a gun from underneath the bar and shoot the victim in the head over an argument about whether the Army or Marines were superior. Taylor instructed Hooper to report the incident to police.

Police Officer Raymond Hein encountered Hooper at the 39th police district at approximately 3:30 p.m. on April 7, 2006. Hooper had blood on his pants, shirt, and shoes as well as human tissue and what appeared to be brain matter. Testing of Hooper's clothing and boots established that the blood was human. Officer Hein indicated that Hooper was visibly upset and reported that he had observed, Spawn, which is Appellee's nickname, shoot a man with a rifle. Hooper then traveled with police to the row home, where police dis-covered Bing. Bing had died from a 12 gauge shotgun wound to his head. Hooper stated that a gun was kept on the shelf behind the bar, but acknowledged that he did not see Appellee with the shotgun in his hand before the shooting. At trial, Hooper admitted to two prior convictions for DUI and a conviction for possession with intent to deliver.

Police located two unfired shotgun shells and a fired .22 cartridge in the bar area. The unfired shotgun shells were not collected from the scene because they were in glass and covered in dust. A firearms expert received fifty-nine uncoated lead fragments, and a plastic shot cup wad that was for a 12–gauge shotgun. These items were recovered from the head wound of the victim. Police did not find the shotgun. The expert noted that the plastic shot cup was torn and distorted and had blood and tissue-like substances on it. He further opined that the plastic shot cup wad would not ordinarily penetrate skin unless fired from a distance of less than five or six feet, and that the shotgun in this matter was fired within two or three feet of the victim. The medical examiner also testified that the victim was shot from close range, between four and six feet. He added that the victim had cocaine metabolites and alcohol in his system.

Appellee's grandmother testified that Appellee did not reside at the home where the killing occurred, but rather that Appellee lived at 4819 Franklin Street in Philadelphia. However, she acknowledged that she had informed police earlier that Appellee lived at the home where the murder transpired. Appellee also testified in his own defense. He told the jury that he was at home at 4819 North Franklin Street with his fiancée and children. Appellee maintained that he did not learn of the shooting until approximately 5:00 or 6:00 p.m., when he checked the messages on his

cellular phone. According to Appellee, there were messages from his grandmother and a detective indicating that homicide police were looking for him. After contacting an attorney and police, Appellee turned himself in.

Appellee also informed the court that his fiancée was available and willing to testify on his behalf. Trial counsel claimed that he only learned of the alibi witness the day before the trial. He added that the case had been scheduled for trial on a previous date and Appellee had not informed him of any alibi. Appellee told the trial court that he informed his attorney about the alibi "a while ago." N.T., 7/31/07, at 202. However, at jury selection for the original trial date, Appellee indicated that there were no witnesses he intended to call.[1] Appellee did so after being admonished by the trial court for looking at his counsel when being questioned.

The Commonwealth called a surprise witness to rebut Appellee's alibi testimony. The witness, Barbara Boulware, was the victim's cousin. She testified that she did not know Appellee, but knew someone named Spawn. When asked if she saw Spawn in the courtroom, she replied, "His face looks familiar." N.T., 8/1/07, at 108. Ms. Boulware further provided that Spawn and the victim gave her a ride home from the bar in the early morning hours of the date of the murder. On cross-examination, the witness admitted that she had been consuming alcohol for twelve hours straight on the date of the murder.

During his summation, trial counsel argued that Appellee credibly testified as to his alibi and asserted that Hooper was the culprit. He pointed to the physical evidence of the location and manner in which the victim was shot and the blood and brain matter on Hooper's clothing as disproving Hooper's testimony. The jury, nonetheless, found Appellee guilty of first-degree murder and possession of an instrument of crime ("PIC"). The court sentenced Appellee, on August 6, 2007, to a mandatory term of life imprisonment for the murder count and a concurrent term of three months to five years for PIC. Appellee timely filed a post-sentence motion on August 13, 2007. The motion was dismissed by operation of law on December 11, 2007. Appellee timely appealed, and this Court affirmed his judgment of sentence on May 21, 2009. *Commonwealth v. Stewart*, 976 A.2d 1216 (Pa.Super.2009) (unpublished memorandum).

Thereafter, on November 30, 2009, Appellee filed a timely *pro se* PCRA petition. The court appointed counsel, who filed an amended petition. Therein, Appellee maintained that trial counsel was ineffective for failing to interview and present his then-fiancée, Rasheda Grazier, at trial. The Commonwealth filed a response, requesting the court to dismiss Appellee's petition. Appellee filed a supplemental amended petition, and the court held evidentiary hearings on June 14 and June 17, 2011. Ms. Grazier testified at the evidentiary hearing. She provided that she was in the courtroom at his first scheduled trial and indicated that she telephoned Appellee's trial attorney and spoke to him about being an alibi witness before that time.

In addition, she was present in the courtroom and available to testify at Appellee's trial. According to Ms. Grazier, she would have testified consistently with Appellee's trial testimony. Appellee's grandmother also testified at the eviden-

---

1. Jury selection for Appellee's original trial date occurred on March 26, 2007. As a result of being involved in a fistfight with the victim's brother while incarcerated, Appellee was hospitalized and the court rescheduled the trial. Appellee's trial transpired between July 30, 2007 and August 2, 2007.

tiary hearing. She provided copies of two letters that Appellee sent to trial counsel before his trial, one of which explicitly referred to Ms. Grazier and set forth her phone number and address. Another letter referenced a female witness who spoke with counsel and would testify on his behalf. The court heard argument on July 8, 2011. The Commonwealth vigorously argued that neither Ms. Grazier nor Appellee was credible. Subsequently, on December 9, 2011, again after hearing argument, the PCRA court, who presided over Appellee's trial, granted Appellee a new trial.

The Commonwealth timely appealed. The PCRA court and the Commonwealth complied with Pa.R.A.P. 1925. In an unpublished memorandum, a divided panel of this Court reversed. Appellee sought reargument and we granted *en banc* review. The matter is now ready for this Court's consideration. The Commonwealth raises two issues for our review.

1. Is counsel ineffective for not investigating a putative alibi witness—defendant's fiancée—where defendant, on the record, denied having witnesses; did not tell counsel that he had an alibi witness until the eve of his second trial; the fiancée never disclosed the putative alibi to counsel or anyone during the 16 months that defendant remained in jail; and counsel concluded that the last-minute witness would be easily discredited and would harm the defense?

2. Is defendant entitled to a new trial on a claim of ineffectiveness where he failed to establish prejudice, in

that the impeachable alibi witness would have put at risk his own alibi testimony?

Commonwealth's brief at 3.[2]

We review an order granting a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. *Commonwealth v. Sam*, 597 Pa. 523, 952 A.2d 565, 573 (2008). This review is limited to the findings of the PCRA court and the evidence of record. *Id.* We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. *Id.* "Further, we afford great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." *Commonwealth v. Carter*, 21 A.3d 680, 681–82 (Pa.Super.2011). Instantly, Appellee, the defendant, was the prevailing party at the PCRA level. Thus, we must review the record in a light most favorable to him, not the Commonwealth.

Both of the Commonwealth's issues contest the PCRA court's findings that trial counsel rendered ineffective assistance. "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111, 1127 (2011). Where the petitioner "fails to plead or meet any elements of the above-cited test, his claim must fail." *Common-*

---

2. In its Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, the Commonwealth raised a single issue: "Did the PCRA Court err in finding trial counsel ineffective for not calling petitioner's fiancée as an alibi witness where petitioner failed to prove actual prejudice and lack of a reasonable basis?"

We decline to find that the Commonwealth waived its first prolix issue as it is fairly encompassed by the Commonwealth's original claim and the PCRA court addressed the matter. *See* PCRA Court Opinion, 5/22/12, at 6 n. 18.

*wealth v. Burkett,* 5 A.3d 1260, 1272 (Pa.Super.2010).

■ A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones,* 583 Pa. 130, 876 A.2d 380, 385 (2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . ., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the "facts rise to the level of arguable merit is a legal determination." *Commonwealth v. Saranchak,* 581 Pa. 490, 866 A.2d 292, 304 n. 14 (2005).

■ The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. *Commonwealth v. Colavita,* 606 Pa. 1, 993 A.2d 874 (2010). Counsel's decisions will be considered reasonable if they effectuated his client's interests. *Commonwealth v. Miller,* 605 Pa. 1, 987 A.2d 638 (2009). We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken. *Id.* at 653.

■ "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Commonwealth v. Steele,* 599 Pa. 341, 961 A.2d 786, 797 (2008). A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.' *Commonwealth v. Rathfon,* 899 A.2d 365, 370 (Pa.Super.2006)." *Burkett, supra* at 1272; *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Viewing the evidence in a light most favorable to Appellee, his alibi witness, Ms. Grazier, was in the courtroom at his first trial and spoke with Appellee's trial attorney about being an alibi witness prior to that time. Ms. Grazier telephoned trial counsel and spoke to him about testifying as an alibi witness. Appellee, during his second trial, informed the court that he wished Ms. Grazier to testify. Ms. Grazier was present in the courtroom and available to testify at that time.

Ms. Grazier, in an affidavit, set forth that she would testify consistently with Appellee's trial testimony, *i.e.,* Appellee was home with her at the time of the murder. Ms. Grazier testified at the evidentiary hearing consistently with that affidavit. Appellee's grandmother provided copies of two letters that Appellee sent to trial counsel before his trial. One letter expressly referred to Ms. Grazier and included her phone number and address. A second letter referenced a female who had spoken with counsel about testifying on Appellee's behalf. Presumably, this witness was Ms. Grazier.

Trial counsel's file was extraordinarily sparse. The file contained one page which set forth the date and location of the murder, the charges leveled against Appellee, that the victim suffered a shotgun wound, and that three people were present: the victim, Appellee, and the eyewitness. Counsel did not meet with Ms. Grazier, nor did an investigator speak with her. Trial counsel met with Appellee one time before his first trial and had two or three telephone conversations with Appellee. Appellee informed trial counsel at their initial meeting that he wanted counsel to call Ms. Grazier and that she would state that Appellee was with her on the date in question. Trial counsel then met with Appellee two days before his second trial. Prison visitation records confirmed that counsel only met with his client twice.

At no time did trial counsel discuss substantive trial strategy with Appellee. Ap-

pellee asserted that he did not tell counsel that he was at the bar at the time of the killing, in direct contradiction to trial counsel's averment at the PCRA hearing. He also maintained that trial counsel's statement to the trial court that he did not tell him of his alibi witness until the day before trial was not true.

■ Additionally, the PCRA court made credibility determinations and factual findings in Appellee's favor. We are bound by a PCRA court's credibility decisions. *Commonwealth v. Kevin Johnson,* 51 A.3d 237, 242–243 (Pa.Super.2012) (*en banc*). Indeed, the underlying premise of the prosecuting attorney's argument at the PCRA hearing on July 8, 2011, was that Appellee and his purported alibi witness were not credible. A sampling of the arguments proffered will suffice to show that credibility was at the heart of the PCRA court's resolution of this matter.

At the outset, the prosecutor asserted, "The defendant's testimony about having an alibi to begin with was just not credible. This is an issue of credibility, and I ask the Court to look at the credibility of the defendant in this case." N.T., 7/8/11, at 16. Regarding Appellee's alibi witness, the prosecutor continued, "I just can't imagine a reasonable person having their fiancée arrested and sitting in custody and not telling somebody, other than his grandmother, that he was with me. How do you do that? That doesn't make sense. That's just not credible." *Id.* at 20; *see also id.* at 21 ("none of her testimony makes sense, and again, she is biased.").

The prosecutor also maintained that letters from Appellee to his trial attorney indicating that he had an alibi witness and asking if counsel had talked with her were fabrications. *Id.* at 18 ("when you make things up sometimes you just go a little too far, and that was his way of allegedly trying to prove to the Court that the date

he claims he sent the letters he sent them. It's just insane. It just does not make sense."). According to the prosecution, Appellee saved county prison scratch papers for over two years that conveniently had dates on them, and then wrote the letters on the back of those documents, after the fact, to show that he alerted counsel to his alibi witness. *Id.* at 34–41. The Commonwealth continued to hammer at issues of credibility, stating, "I contend that there absolutely is no credibility to the fact that there was an alibi at all, and I ask the Court when you consider the defendant's testimony that you also consider his *crimen falsi* for unauthorized use of a vehicle. I think that's relevant to whether he's being candid with the Court." *Id.* at 26.

In spite of these arguments, the PCRA court afforded relief. It is evident from our review that the PCRA court determined that Appellee and Ms. Grazier were credible in several important respects, and that Appellee's trial counsel was not credible. Specifically, the PCRA court deemed Appellee and Ms. Grazier to be credible to the extent that Appellee's counsel was alerted of her proposed alibi testimony earlier than he claimed. Second, Appellee did not fabricate his letters to counsel, *see e.g.* N.T., 7/8/11, at 38, and trial counsel never substantively interviewed the alleged alibi witness. In this regard, the PCRA court noted that trial counsel's file contained no notes regarding any discussions he had with Ms. Grazier, *see* PCRA Court Opinion, 5/22/12, at 5 n. 17, but that "the record established that petitioner had told counsel of the existence of the alibi witness some time prior to trial [and] at least as late as the day . jury selection began." *Id.* at 9.

■ The PCRA court expressly made the factual finding that counsel, in a first-degree murder case, "made no attempt to

explore [Ms. Grazier's] testimony to determine whether it would be beneficial for petitioner to call her as a witness." *Id.* (underline in original).[3] Most importantly, the PCRA court did not find credible trial counsel's explanation for failing to interview or call the witness, since he allowed his client to testify as to the same alibi. At the July 8, 2011 PCRA hearing, the

court cogently questioned the prosecution, "So you are saying that although [trial counsel] knew that it was incredible and although the defendant had told him that he had been there at the bar, that he put on perjured testimony, although you hold him up as a paragon of whatever his duties are as counsel[?]" N.T., 7/8/11, at 30. When the prosecution responded that the

3. We are cognizant that the Commonwealth submits that the PCRA court opinion in this matter is not part of the record. In support of this position, the Commonwealth relies on Pa.R.A.P. 1921 and *In re D.D.*, 409 Pa.Super. 35, 597 A.2d 648, 653 (1991) (*en banc*), *Commonwealth v. Rosa*, 734 A.2d 412, 414 (Pa.Super.1999), *Commonwealth v. Schwartz*, 267 Pa.Super. 170, 406 A.2d 573, 574 (1979), *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa.Super.2008), and *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258, 264–265 (1974).

Pa.R.A.P. 1921 provides, "[t]he original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases." A trial court opinion is an original paper filed and docketed in the lower court. We add that the appellate rule governing trial court opinions falls under the chapter governing the record on appeal, and that Pa.R.A.P. 2119(c), pertaining to references to the record, states, "[i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record," the party must footnote or reference the place in the record where the matter appears.

The cases relied upon by the Commonwealth all stand for the unremarkable position that where the evidentiary record is in opposition or does not support a statement made by a trial court in its opinion, the evidentiary record controls. *See also Commonwealth v. Africa*, 466 Pa. 603, 353 A.2d 855, 866 (1976). For example, if a trial court were to state that a witness said that it was snowing, when the transcript shows that the witness stated it was raining, we would be bound by the facts in the transcript. The Commonwealth simply misconstrues this Court's statements regarding trial court opinions. While a

trial court opinion is not part of the **evidentiary** record and cannot be used to add to or contradict evidence in the case, it is part of the certified record under Pa.R.A.P. 1921, and we may consider it in conducting our review. This is a critical distinction overlooked by the Commonwealth. Such a common sense reading is consistent with our review in numerous settings wherein we are bound by findings of a court that have support in the evidentiary record. To the extent that this Court's pronouncements in prior cases can be read in another manner, they are disavowed. Further, insofar as the Commonwealth's argument can be read to imply that only a party's filings are part of the record, such a position is untenable as that would exclude orders filed by the trial court.

Similarly, we do not view our Supreme Court's statements in *Young* as indicating that we are precluded from considering a PCRA court opinion for purposes of appellate review to determine the court's factual findings and credibility determinations. *See Commonwealth v. Simpson*, —— Pa. ——, 66 A.3d 253, 259 n. 8 (2013) (chastising PCRA court for not crafting a complete opinion as it inhibited appellate review); *Commonwealth v. Dennis*, 597 Pa. 159, 950 A.2d 945, 956–957 (2008) (same); *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1181 (1999) (remanding for filing of adequate PCRA court opinion). In this respect, the Commonwealth states that the PCRA court did not make any findings of fact in its opinion. The PCRA court opinion refutes the Commonwealth's position. The opinion includes headings entitled, "Facts" and "Evidentiary Hearing," and sets forth, with citations to the evidentiary record, the pertinent facts. *See* PCRA Court Opinion, 5/22/12, at 2–5. The learned PCRA judge, M. Teresa Sarmina, also made additional factual findings in the analysis section of her opinion. Accordingly, the Commonwealth's claim that the PCRA court made no factual findings is spurious.

PCRA proceeding was not about trial counsel's ethical obligations, the court agreed and said, "but it impacts on his credibility, because every trial attorney, certainly by the time you are doing homicide cases, should know that you do not perpetrate a fraud upon the tribunal[.]" *Id.* at 31. Phrased differently, trial counsel put Appellee on the stand to testify as to an alibi and argued that his testimony was credible. Therefore, trial counsel's after-the-fact explanation that Ms. Grazier's substantially identical testimony would have been viewed as incredible rang hollow.

In its opinion, the court further expounded that trial counsel's explanation that he did not present Ms. Grazier because she was not credible "might have been reasonable had counsel at least spoken to the witness to assess her information." PCRA Court Opinion, 5/22/12, at 10. According to the PCRA court, which presided over this trial, failing to interview the "known alibi witness was inexcusable here where there was only one eyewitness presented by the Commonwealth." *Id.* The court found that counsel "did not offer any reasonable basis for his decision to not even investigate this possible alibi witness[.]" *Id.* (underline in original). Thus, while trial counsel offered an explanation for why he did not call the witness, he gave no credible answer as to why he conducted no investigation into this case and did not interview the alibi witness. With respect to other important factual findings, the PCRA court found that trial counsel met with Appellee only one time before his first trial, and the evidence introduced at the PCRA court hearing demonstrated that trial counsel only met with Appellee twice—once before his first trial and once before his second trial.

The Commonwealth ignores our standard of review and affords no deference to these factual findings and credibility determinations. Indeed, as noted in footnote 3, it maintains that the PCRA court did not make any factual findings and suggests that we cannot rely on the PCRA court opinion for our review. According to the Commonwealth, contrary to Ms. Grazier and Appellee's PCRA testimony, trial counsel did not learn of Ms. Grazier until after the first scheduled trial. The Commonwealth contends that trial counsel did speak with Ms. Grazier on several occasions and that she did not inform him of an alibi. Thus, it argues that trial counsel had a reasonable basis not to present her testimony.

Despite its position that Ms. Grazier did not inform counsel of an alibi, the Commonwealth contradictorily argues that trial counsel concluded that Ms. Grazier would not be a credible alibi witness "because of her inexplicable delay in coming forward," and "would not have been a credible defense witness[.]" Commonwealth's brief at 30. It submits that "[c]ounsel's evaluation of the witness's credibility and vulnerability to impeachment was objectively reasonable, and did not require additional investigation." *Id.* The Commonwealth asserts that the PCRA court further erred in relying on *Commonwealth v. McCaskill,* 321 Pa.Super. 266, 468 A.2d 472 (1983), in affording Appellee relief.

In *McCaskill,* this Court in a PCHA case, the predecessor to the PCRA, reversed the lower court and found trial counsel ineffective for failing to call an alibi witness. A jury had convicted the defendant of drug offenses based on testimony from two Pittsburgh police officers. One officer testified that he purchased heroin from the defendant, while the other confirmed that he observed the drug transactions. During his PCHA proceeding, the defendant asserted that at the time of the drug sales, he was babysitting

with his then-girlfriend, Beatrice Giles. He testified that he told trial counsel the name of both Giles and the mother of the children that he babysat, Paulette King.

According to McCaskill, he had been staying at King's home because Giles was visiting from Detroit and staying with her. At the PCHA hearing, King corroborated McCaskill's account that he was staying at her home during the week in which the drug transaction occurred. She did not remember the day of the drug transaction, but provided that when she was home, McCaskill was also present.

King also testified that she was not home on Mondays, Wednesdays, and Fridays, because she attended community college classes. However, the date of the drug transaction was a Thursday. The *McCaskill* panel reasoned that, "[a]ccording to King's testimony, she was home that night, for her classes were Monday, Wednesday, and Friday, and Giles and appellant were with her." *Id.* at 476. It added, "even if King did not get home until 8 p.m.-as she did on class nights-appellant could not have been there with Giles and also have been at the site of the sale[.]" *Id.* at 476–477.

Trial counsel in *McCaskill* testified that he did not remember speaking with or attempting to find Giles or King. The panel found that trial counsel did not make an "attempt to explore their testimony and to call them as witnesses." *Id.* at 477. The *McCaskill* Court continued that trial counsel's explanation for this failure, that he expected the indictment to be quashed due to a speedy trial violation, was not reasonable. In affording relief, this Court acknowledged that, "the jury might not have believed King's testimony; it might have believed the detective's instead." *Id.* However, this Court reasoned, "when the Commonwealth's case is thus dependent upon the credibility of its witnesses, trial counsel must explore the testimony of any witness, such as King, whose testimony might cast doubt on the testimony of the Commonwealth's witnesses." *Id.*

The Commonwealth argues that unlike *McCaskill*, trial counsel was familiar with Ms. Grazier. It submits that trial counsel substantively assessed Ms. Grazier's credibility and made a strategic choice not to call her. In addition, it maintains that Ms. Grazier's testimony was "easily impeachable." Commonwealth's brief at 34.

Finally, the Commonwealth asserts that the PCRA court erred in finding actual prejudice, *i.e.,* that there was a reasonable probability that a corroborating alibi witness's testimony would have altered the outcome of the trial. In this regard, it merely reiterates its prior positions that Ms. Grazier would not be considered a credible witness, and condemns the PCRA court for purportedly "leaving it to a future jury to assess the witness's credibility." Commonwealth's brief at 38.

We acknowledge that permeating throughout the Commonwealth's entire brief is its belief that the alibi witness was not credible. To the extent that the Commonwealth relies heavily on the lack of credibility of the alibi witness, it is important to note that although her testimony could be viewed as suspect by a jury based on the totality of the facts presented, it is not this Court that makes credibility findings. The Commonwealth and this Court are bound by the preliminary credibility determinations of the PCRA court. Further, viewing the evidence as we must, the PCRA court, contrary to the Commonwealth's representation, determined that Ms. Grazier did not belatedly tell counsel of the alibi. Additionally, in opposition to the Commonwealth's position, counsel never meaningfully interviewed Ms. Grazier. Indeed, by viewing the evidence in a light most favorable to itself and not the winner

below, the Commonwealth is guilty of what defendants so often do in their appeals.

The Commonwealth also does not fully confront the PCRA court's analysis relative to trial counsel's failure to investigate and interview the witness; rather, it contends that trial counsel, despite having no prior substantive experience with the witness and never meaningfully interviewing her, had a reasonable basis for not calling her as a witness. Neglecting to call a witness differs from failing to investigate a witness in a subtle but important way. *Commonwealth v. Dennis*, 597 Pa. 159, 950 A.2d 945, 960 (2008) (discussing *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976), and *Commonwealth v. Perry*, 537 Pa. 385, 644 A.2d 705 (1994)); *Commonwealth v. Jones*, 496 Pa. 448, 437 A.2d 958 (1981); *see also Commonwealth v. Raymond Johnson*, 600 Pa. 329, 966 A.2d 523 (2009).

 A claim that trial counsel did not conduct an investigation or interview known witnesses presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. *Perry, supra, Jones, supra; Mabie, supra; Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992), *Commonwealth v. Hull*, 982 A.2d 1020 (Pa.Super.2009), and *Commonwealth v. Harris*, 785 A.2d 998 (Pa.Super.2001); *Commonwealth v. Gillespie*, 423 Pa.Super. 128, 620 A.2d 1143 (1993). It can be unreasonable *per se* to conduct no investigation into known witnesses. *Dennis, supra* at 960. A showing of prejudice, however, is still required. *Id.* at 961.

 Trial counsel failed to substantively interview either Appellee or his alibi witness, and declined to present the possible alibi witness, despite permitting Appellee to testify as to the alibi. As our Supreme Court stated in *Perry*, "[f]ailure to prepare is not an example of forgoing one possible avenue to pursue another approach; it is simply an abdication of the minimum performance required of defense counsel." *Id.* While *Perry* was a death penalty case, as Justice Eakin lucidly explained in his concurrence in *Commonwealth v. Brooks*, 576 Pa. 332, 839 A.2d 245 (2003), the right to effective counsel attaches to "the capital defendant, the felon, and the misdemeanant alike." *Id.* at 255–256. It is untenable to conceive a reasonable justification for appearing in a first-degree murder case without thorough preparation, including interviewing a known potential alibi witness.

Pointedly, our Supreme Court in a PCHA case held that it was improper for trial counsel to judge the credibility of a witness without interviewing that person. *See Jones, supra* at 960. In *Jones*, our Supreme Court specifically found trial counsel ineffective for failing to interview a witness where the key issue turned on the credibility of the defendant and an undercover police officer. In doing so it opined, "[i]t is not for this Court to decide what effect [the witness's] testimony may have had on the jury if he had been called to testify. Matters of credibility are best left to the fact-finders." *Id.; see also Commonwealth v. Adams*, 465 Pa. 314, 350 A.2d 412 (1976); *McCaskill, supra.*[4]

---

4. We are cognizant that the PCRA court, as a fact-finder, must make credibility determinations in the first instance to determine prejudice. Our Supreme Court in this regard has stated,

> Respect for that final judgment counsels that it is not a second trial jury, but the PCRA judge, who must render the *Strickland* prejudice determination. Were the analysis otherwise, the initial trial would lose its status as the main event, and final criminal judgments would be subject to vacatur based on mere affidavits. And so, the PCRA court clearly erred here in stating

The Commonwealth attributes a reasonable basis for counsel's failure to substantively interview the witness where none exists. Here, counsel argued during his closing statement that Appellee testified credibly as to his alibi. Yet, he never substantively interviewed the alibi witness. Only in his attempt to explain his failure to conduct a meaningful investigation in this matter did counsel maintain that Appellee's alibi lacked credulity. Nonetheless, counsel himself argued during his closing statement that Appellee testified credibly about the alibi. The PCRA court did not find trial counsel's PCRA testimony credible in this respect.

Equally unavailing is the Commonwealth's reliance on *Commonwealth v. Davis*, 381 Pa.Super. 483, 554 A.2d 104 (1989), to conjure a reasonable basis for trial counsel's complete failure to investigate the alibi witness. In *Davis*, a case involving a direct appeal and no credibility or factual findings in favor of the defendant, this Court determined that counsel was not ineffective for declining to call an alibi witness who lived with the defendant. In contrast, the PCRA court herein observed the alibi witness, heard her testimony, and deemed it sufficiently credible to award relief.

█ If counsel or an investigator had prior experience with the witness, seen her demeanor, interviewed her, and decided that she was unlikely to be deemed credible, we could agree that counsel actually had a reasonable strategy. Absent some type of substantive interaction with the witness, the credibility of the alibi witness was not for trial counsel to arbitrarily de-

that "the task of determining witness credibility belongs to a jury." That will be true if, and when, a defendant gets a new trial on *Strickland* grounds; but the predicate *Strickland* question on a collateral attack requires a judicial assessment of credibility in evaluating prejudice.

cide. *See Jones, supra* at 960; *Mabie, supra.* As our Supreme Court said in *Mabie, supra,*

> the question here is the decision not to interview [the witnesses], not the decision to refrain from calling them at trial. . . . the value of the interview is to inform counsel of the facts of the case so that he may formulate strategy. Perhaps, after questioning these witnesses, counsel may have concluded that the best strategy was not to call them. . . . However, no such claim of strategy can be attached to a decision not to interview or make an attempt to interview eyewitnesses prior to trial.

*Id.* at 374–375.

Like in *Mabie*, counsel could have determined after interviewing the alibi witness that she should not be presented. Nonetheless, no such claim of a reasonable strategy attaches to a decision not to meaningfully interview the alibi witness before trial.

█ Moreover, trial counsel absurdly claimed that presenting the actual alibi witness, when Appellee himself was going to testify as to the alibi, was going "to change the entire playing field or to change the entire plan of how [he] was going to attack this case[.]" N.T., 7/14/11, 27. How an alibi witness testifying consistently with counsel's own client's testimony changes the playing field is beyond this Court's comprehension. Perhaps this is why the PCRA court simply did not credit trial counsel's unbelievable explanation. Further, counsel's strategy to "pin this

*Commonwealth v. Raymond Johnson*, 600 Pa. 329, 966 A.2d 523, 540 (2009). Credibility for purposes of the ineffectiveness test and credibility determinations at trial, nonetheless, are distinct. *Id.* at 541.

murder on Alvin Hooper[,]" *id.*, simply cannot provide a basis for not calling an alibi witness since it in no manner conflicts with that strategy.

Concomitantly, the Commonwealth's position that *Commonwealth v. Hammond,* 953 A.2d 544 (Pa.Super.2008), supports its position that Appellee did not establish prejudice is unconvincing. In *Hammond,* a PCRA matter, this Court, with one judge dissenting, reversed an award of a new trial based on counsel's alleged failure to interview a witness. However, therein, trial counsel interviewed the defendant over ten times and his investigator thoroughly interviewed the purported witness, who was not an alibi witness, had serious drug charges pending, and was incarcerated at the time of trial. *Hammond* is wholly inapposite for these reasons as well as the factual dissimilarities between what the witness therein would have testified to and the evidence arrayed against Hammond. Here, neither counsel nor any investigator interviewed the alibi witness, and she was not facing serious drug charges or in jail.

Instantly, a solitary witness testified that Appellee committed the killing, a witness whom defense counsel argued committed the crime. In addition, the Commonwealth impeached the credibility of Appellee with one witness. Specifically, the Commonwealth called a cousin of the victim. As noted, she testified that she did not know the defendant, but knew someone named Spawn. She indicated that Appellee's face looked familiar and that Spawn and the victim gave her a ride home from the bar very early in the morning on the date of the murder. She admitted, however, that she had been consuming alcohol for twelve hours on the day in question.

Counsel in this case conducted no investigation, did not substantively interview Ms. Grazier, nor did he meaningfully meet with and discuss trial strategy with his client. This cannot be the type of representation that we are to expect from attorneys in any case, let alone in homicide cases. *See Johnson,* 966 A.2d at 537–538 ("Counsel's general duty of effective representation, of course, also includes a duty to familiarize himself with the witnesses counsel intends to call to testify at trial. Given the nature of an alibi defense, this duty is especially important when preparing alibi witnesses."); *see also Johnson,* 51 A.3d at 247–255 (Wecht, J. concurring).

▪ This case hinged on whether the jury believed Appellee had an alibi or Hooper's testimony. The evidence in this case was not overwhelming. Trial counsel elected to present an alibi defense in conjunction with arguing that Hooper was the culprit. The alibi witness's testimony that Appellee was with her at the time of the commission of the crime could have benefitted him and cast doubt on Hooper's testimony. While it is true that the Commonwealth could have sought to impeach her credibility, it is unsound practice for trial counsel to judge the credibility of a witness without prior experience with the witness or interviewing that person.

▪ Moreover, Appellee was not required to demonstrate that Ms. Grazier's testimony would have been deemed credible by a jury to establish actual prejudice. *Johnson,* 966 A.2d at 541 ("Such a high burden, it seems to us, does not comport with the *Strickland* reasonable probability standard.").[5] As our Supreme Court has

---

5. We note that, *"[t]he 'reasonable probability' test is not a 'stringent one,' and is a probability sufficient to undermine confidence in the out-* come." *Commonwealth v. Rathfon,* 899 A.2d 365, 370 (Pa.Super.2006) (emphasis in original); *see also Strickland v. Washington,* 466

stated, "assessing credibility for purposes of *Strickland* prejudice is not necessarily the same thing as assessing credibility at a trial." *Id.* Thus, we agree with the PCRA court's conclusion that there is a reasonable probability that the alibi witness's testimony could have altered the outcome of the proceeding.

Order affirmed.

U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.").