J-E02011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RALPH OMAR WILLIAMS, | |
| Appellant | No. 1523 WDA 2012 |

Appeal from the PCRA Order June 6, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0014098-2005

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, ALLEN, OTT, WECHT, STABILE, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:          **FILED SEPTEMBER 22, 2014**

Ralph Omar Williams appeals *pro se* from the June 6, 2012 order denying his first counseled PCRA petition after the court permitted counsel to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*) ("**Turner/Finley**"). After careful review, we affirm.

A prior panel of this Court outlined the factual and procedural history of this matter as follows.

> In the early morning hours of August 18, 2005, David McWright was shot and killed on a Wilkinsburg street. Eugenia Mathis, David McWright's mother, subsequently received information which led her to believe Williams was involved in the shooting. Four days later, on August 22, 2005, Mathis, her daughters— Velvet Atkins and Ebony McWright, and five nieces were traveling to David McWright's wake in Atkins' vehicle when they spotted Williams on Center Street. Mathis, who was driving at

the time, slammed on the brakes and a number of the women inside, including Ebony McWright, exited the vehicle and began chasing after Williams. The women who remained in the vehicle circled the area while Williams sought refuge.

Williams eventually made his way to Franklin Avenue, which runs in an east-west direction approximately two blocks north from the Kelly Elementary School in Wilkinsburg. *See generally*, N.T., 6/13/06, at 32. Both the group of women giving chase on foot and the group of women giving chase in Atkins' vehicle quickly converged on Williams, eventually spotting him at the corner of Franklin Avenue and Pitt Street, the latter of which runs in a north-south direction. *Id.* Atkins, who was driving at this point, parked the vehicle on Rebecca Avenue, approximately one block south of the Franklin-Pitt intersection, exited the vehicle, and positioned herself on the corner of Rebecca and Pitt. *Id.* Ebony McWright and the women with her, who originally had spotted Williams from their position on the corner of Pitt Street and Kelly Avenue, proceeded north on Pitt Street, away from Kelly Avenue and towards the Rebecca-Pitt intersection, to confront Williams. *Id.* at 44. As the women proceeded up Pitt Street, Williams and his accomplices began walking down Pitt Street towards the Rebecca-Pitt intersection. *Id.* at 24, 33, 44. McWright and the others immediately recognized Williams was armed with a handgun. Atkins sought refuge in her vehicle, while McWright and the others with her turned to flee. *Id.* at 33. Atkins watched as Williams and his companions crossed Rebecca Avenue running south on Pitt Street. *Id.* According to Atkins, Williams, after crossing Rebecca Avenue, backed up towards Franklin Avenue and let off a torrent of gun fire. *Id.* at 33, 34-35, 36. Miraculously, no one was injured.[1] At some point during the melee, Mathis called the police.

On August 25, 2005, the Commonwealth filed a criminal information charging Williams with eight counts of aggravated assault, eight counts of aggravated assault with a deadly weapon, eight counts of REAP, and one count of criminal conspiracy. On June 13, 2006, Williams appeared for a bench

---

[1] Eight shell casings were recovered from two parts of the scene. Six casings were fired from one weapon and two from a second gun.

trial. At the conclusion of the Commonwealth's case, Williams moved to dismiss five of the aggravated assault and five of the aggravated assault with deadly weapon charges, five of the REAP charges, and the criminal conspiracy charge. The trial court granted the motion due to the Commonwealth's failure to produce Mathis' five nieces, the respective victims for which these charges were assessed. N.T., 6/13/06, at 59-61. The granting of Williams' motion left nine charges pending—three counts of aggravated assault, three counts of aggravated assault with a deadly weapon, and three counts of REAP.

At the conclusion of trial, the trial court found Williams guilty of aggravated assault and aggravated assault with a deadly weapon against McWright and of recklessly endangering Mathis, Atkins, and McWright. On August 14, 2006, Williams filed a written motion for extraordinary relief requesting the trial court either arrest judgment on all five convictions rendered, enter a judgment of acquittal as to the convictions, or, alternatively, grant a new trial.[2]

On August 17, 2006, Williams appeared for sentencing at which time the court, having reviewed [Williams'] motion for relief filed under Pa.R.Crim.P. 704(B), arrested judgment on Williams' aggravated assault and aggravated assault with a deadly weapon convictions, as well as the conviction for recklessly assaulting Mathis. *See* N.T., 8/17/06, at 2. Despite the arrests of judgment, Williams then bitterly complained about his attorney's trial performance. When the attorney suggested the trial court appoint a new attorney to handle post-sentencing matters, the trial court, obviously persuaded by Williams' bellicose complaints and without prompting, responded:

> Well, I think under the circumstances what I'll do is I'll grant him a new trial on the two [REAP] charges. So, we'll arrest judgment on the aggravated assaults and one [REAP], and we'll grant a new trial on the two [REAP] charges.

_____

[2] The original panel later pointed out that a written motion for extraordinary relief is improper.

N.T. at 10. The formal Order arresting judgments and granting a new trial was entered on August 21, 2006.

**Commonwealth v. Williams**, 959 A.2d 976 (Pa.Super. 2008) (unpublished memorandum) (footnotes omitted).

The Commonwealth timely appealed and Appellant filed a timely cross-appeal. This Court consolidated the cases and reversed the trial court's order of a new trial. We further rejected Appellant's sufficiency and weight claims as to two counts of recklessly endangering another person pertaining to Velvet Atkins and Ebony McWright. The panel declined to rule on Appellant's sufficiency claims for his aggravated assault, aggravated assault with a deadly weapon, and remaining REAP convictions, reasoning that it was without jurisdiction because the trial court had not granted a new trial on those claims and had erroneously discharged Appellant. The panel added that Appellant could appeal those convictions following sentencing.

Thereafter, the matter was remanded to the trial court for sentencing. At sentencing, Appellant was represented by two new attorneys. The court imposed a sentence of five to ten years incarceration.[3] Appellant filed a timely *pro se* notice of appeal. The court directed Appellant to file a *pro se*

---

[3] The court imposed a mandatory minimum sentence based on a firearm being involved. Appellant does not raise any challenge to his sentence relative to the firearm mandatory. Importantly, the Supreme Court in its **Alleyne v. United States**, 133 S.Ct. 2151 (2013) decision did not hold that its decision, implicating the constitutionality of mandatory minimum statutes, applied retroactively to cases on collateral review.

- 4 -

concise statement. Appellant served his concise statement on the trial court but did not file it. The court later docketed that statement and issued its opinion. This Court, recognizing that Appellant was entitled to counsel for purposes of his direct appeal if he was *in forma pauperis*, entered a *per curiam* order directing the trial court to determine if Appellant was entitled to counsel. Subsequently, the court appointed Attorney Scott Coffey to represent Appellant on appeal. A panel of this Court deferred resolving four ineffectiveness claims until PCRA review, rejected his remaining claims, and affirmed. ***Commonwealth v. Williams***, 23 A.3d 589 (Pa.Super. 2010) (unpublished memorandum). The Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on May 23, 2011. ***Commonwealth v. Williams***, 21 A.3d 1194 (Pa. 2011).

Appellant filed a *pro se* PCRA petition, and requested that the court re-appoint Attorney Coffey. The court obliged. On May 22, 2012, counsel filed a petition to withdraw and a lengthy and detailed ***Turner/Finley*** no-merit letter. The court granted counsel's motion to withdraw and simultaneously issued a notice of dismissal on June 6, 2012. Appellant responded, and, for the first time, provided unsigned witness certifications written by himself for six witnesses. Four of these witnesses had not been identified by Appellant in his *pro se* petition.

The PCRA court dismissed Appellant's petition on July 9, 2012. Appellant incorrectly mailed his *pro se* notice of appeal to the Pennsylvania

Supreme Court's western district Prothonotary. The High Court's prothonotary received the notice on August 3, 2012; hence, the appeal is timely. Thereafter, the Supreme Court Prothonotory hand delivered the notice of appeal to the appropriate filing office, which docketed the notice of appeal on August 13, 2012.

The PCRA court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal on October 15, 2012. The order was mailed to Appellant, however, it was returned and Appellant did not file a concise statement.[4] The court filed a statement in lieu of an opinion. The original panel in this matter *sua sponte* requested *en banc* review, which we granted. The matter is now ready for disposition.

Although Appellant's brief fails to comply with our rules of appellate procedure for briefing, and it is difficult to understand his precise positions due to his spelling and grammatical troubles, we overlook these defects because we can glean the issues and arguments that he seeks to advance. Appellant raises the following issues for our review, which we have reworded for the sake of clarity:

1. Was Appellant's trial counsel ineffective for not conducting a pre-trial investigation and by placing a gun in Appellant's hand by arguing that Appellant acted in self-defense where petitioner asserted an alibi? Were sentencing counsel, cross

_____

[4] The Commonwealth does not argue that Appellant's issues are waived and, as it is apparent that Appellant did not receive the order, we decline to find waiver.

appeal counsel, direct appeal counsel, and PCRA counsel ineffective for not filing a post-sentence motion and presenting relevant arguments and evidence in such a motion?

2. Was the evidence against Appellant insufficient to convict him of aggravated assault—attempted serious bodily injury, aggravated assault—attempt with a deadly weapon, and reckless endangerment of another person ("REAP") where there was no credited testimony or adequate circumstantial evidence to establish that he fired a gun?

3. Did the incident happen the way the witnesses stated it? Was Appellant the person who the eyewitness described with a gun? Was the eyewitness the aggressor?

**See** Appellant's brief at 5.[5]

_____

[5] Appellant's issues verbatim are as follows:

1. Was Appellant counsel ineffective at the trail [sic] stage for not investigating before trail [sic], and putting a gun in the hands of appellant arguing [sic] self defense when petitioner told him he was not there. Is sentencing stage, cross appeal stage[,] direct appeal stage, PCRA stage counsel[,] ineffective for not filing a post sentence [sic] motion. For not being [sic] up any of the relavant [sic] arugemnets [sic] to the lower courts at all with the evidence on record in a post sentence [sic] motion. As request at sentencing hearing.

2. Was the evidence against Appellant insufficient to convict him of 18 Pa.C.S. § 2702(a)(1) Attempted serior [sic] bodily injury aggravated, of 18 PA.C.S. § 2702(a)(4) attempted deadly weapon aggravated assault, and of 18 PA.C.S. § 2705 REckless endangerment, given that there was no credited testimony or adequate circumstantial evidence establishing [sic] that Appellant was tha [sic] person who fired a gun.

3. Did the incident happen the way the witness stated it. Was it the Appellant the person who the eye witness discride [sic]

*(Footnote Continued Next Page)*

In conducting review of a PCRA matter, we consider the record "in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa.Super. 2014) (*en banc*). Our review is limited to the evidence of record and the factual findings of the PCRA court. **Id**. This Court will afford "great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." **Id**. Thus, when a PCRA court's ruling is free of legal error and is supported by record evidence, we will not disturb its decision. **Id**. Of course, if the issue pertains to a question of law, "our standard of review is *de novo* and our scope of review is plenary." **Id**.

Appellant's initial multi-layered claim pertains to the effectiveness of his various attorneys. We comprehensively discussed the law regarding such claims in **Commonwealth v. Stewart**, 84 A.3d 701 (Pa.Super. 2013) (*en banc*). Therein, we opined:

> "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." **Commonwealth v. Chmiel**, 612 Pa. 333, 30 A.3d 1111, 1127 (2011). Where the petitioner "fails to plead or meet any elements of the above-cited test, his claim must fail." **Commonwealth v. Burkett**, 5 A.3d 1260, 1272 (Pa.Super. 2010).

*(Footnote Continued)* ─────────────────────

> with a gun. was it the eye witness the one's who was the aggressor.

A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 583 Pa. 130, 876 A.2d 380, 385 (2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the "facts rise to the level of arguable merit is a legal determination." ***Commonwealth v. Saranchak***, 581 Pa. 490, 866 A.2d 292, 304 n. 14 (2005).

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. ***Commonwealth v. Colavita***, 606 Pa. 1, 993 A.2d 874 (2010). Counsel's decisions will be considered reasonable if they effectuated his client's interests. ***Commonwealth v. Miller***, 605 Pa. 1, 987 A.2d 638 (2009). We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken. ***Id***. at 653.

"Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. ***Commonwealth v. Steele***, 599 Pa. 341, 961 A.2d 786, 797 (2008). A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.' ***Commonwealth v. Rathfon***, 899 A.2d 365, 370 (Pa.Super. 2006)." ***Burkett***, ***supra*** at 1272; ***Strickland v. Washington***, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

***Stewart***, ***supra*** at 706-707.

Appellant's initial position is that trial counsel was ineffective for presenting a self-defense argument in the alternative to Appellant's alibi defense where Appellant's witnesses testified that he could not have fired the shots. Specifically, Iesha Williams and Tianesja Washington testified that Appellant was inside Ms. Williams' home at the time the shots were fired. Ms. Williams is Appellant's sister and Ms. Washington is his first

cousin. In addition, counsel presented a stipulation that Sylvia Ashby, Appellant's mother, would testify that Appellant was inside Ms. Williams' residence at the time of the shooting. However, during trial counsel's closing statement, he set forth that even if the trial court believed the testimony of the Commonwealth's witnesses, their testimony "presented a scenario for what we call self-defense[.]" N.T., 6/13/06, at 75.

The Commonwealth responds that trial counsel did present Appellant's alibi defense and, in the alternative, argued that Appellant should be found not guilty even if the court disbelieved Appellant's witnesses. Thus, it maintains that counsel could not be ineffective. We agree. The record does not establish that trial counsel placed the gun in Appellant's hand. Rather, trial counsel mounted an alibi defense. In his closing, counsel suggested that even if the court were to disbelieve the alibi testimony, the Commonwealth's evidence did not prove that Appellant committed the crimes in question. Trial counsel's position in this latter respect was based on Appellant's diminutive size and the fact that there were seven or eight women who were much larger, chasing him.

Here, the evidence that placed the gun in Appellant's hand came from the Commonwealth's witnesses. Trial counsel did not stipulate or admit that Appellant possessed a gun. Instead, he posed an argument that, if the Commonwealth's witnesses were believed, any firing of a gun did not constitute the crimes charged. Presenting argument in favor of one's client

based on an interpretation of the evidence is not ineffective assistance of counsel.

Next, Appellant posits that trial counsel was ineffective for not interviewing or presenting several eyewitnesses. This aspect of Appellant's argument is thoroughly undeveloped and fails for this reason alone. **See Steele**, **supra**. Appellant does not identify in his brief who these witnesses were or proffer the substance of their testimony. He does not maintain in his brief that these witnesses were available or willing to testify. In his *pro se* petition, Appellant did mention the name of two witnesses, Paul Hutchinson and Kelly Coldren.[6] His petition listed addresses for these witnesses, but did not offer any other information relative to their proposed testimony. Nonetheless, PCRA counsel in his no-merit letter imprecisely set forth, "Defendant does not indicate the identity of these witnesses or exculpatory evidence, or what the witnesses may have testified to, or that [t]rial [c]ounsel was aware of their existence or proposed testimony." **Turner/Finley** no-merit letter, 5/22/12, at 13.

Subsequently, in Appellant's response to the PCRA court's notice of intent to dismiss, Appellant provided the names of three additional eyewitnesses, Jacquelyn Nija, Amanda Johnson, and Kiesha Moon. He also

_____

[6] Appellant also referenced his sister, Iesha Willaims, and Tianesja Washington, both of whom testified at trial. **See** *Pro se* petition, 2/3/12, at 6. Appellant in his petition spelled Ms. Washington's name as Taneja.

alleged that trial counsel should have presented the testimony of an unnamed 911 operator. Appellant's response to the Rule 907 notice provided some substance of the named witnesses' testimony.

The Commonwealth replies that as to the 911 operator, the tape of the call was played at trial and any testimony would have been cumulative and superfluous. It adds that the proffers as to Ms. Moon and Ms. Johnson are "too vague to permit a conclusion that they would have had useful testimony to offer."[7] Commonwealth's brief at 22. The Commonwealth continues that Mr. Hutchinson's and Ms. Nija's proposed testimony related to information regarding a white car fleeing from the scene, and that Officer Larry Langham testified at trial that police had received that information. Specifically, Officer Langham testified that he received information that black males in a white vehicle had opened fire, N.T. 6/13/06, at 57-58, and that an individual reported that he saw a white car with a Texas license plate fleeing and "believed this car had been shot at[.]" *Id*. at 53. Since the proposed testimony is cumulative of evidence already introduced, the Commonwealth submits that trial counsel cannot be ineffective.

_____

[7] Appellant's proffer as to Ms. Johnson is in total, "Identified as an eyewitness to the shooting. [W]ould have testified that I was not involved." Petitioner's post-hearing brief, 10/9/12, at 24 (this filing was Appellant's response to counsel's no-merit letter and the court's notice of dismissal. It is unpaginated in part; accordingly, we have assigned the page number). Similarly, Appellant's bare bones offer of proof as to Ms. Moon is that she "Would have testified as to what she saw and heard, corroborating my alibi witnesses." *Id*. at 25.

Here, Appellant's claim is two-fold, that counsel was ineffective in not investigating and interviewing witnesses and in failing to present those witnesses. Neglecting to call a witness and failing to investigate a witness are distinct but interrelated claims. **See Stewart**, **supra** at 712. The failure to investigate "presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation." **Id**. "It can be unreasonable *per se* to conduct no investigation into known witnesses." **Id**. Importantly, a petitioner still must demonstrate prejudice. **Id.** To demonstrate prejudice where the allegation is the failure to interview a witness, the petitioner must show that there is a reasonable probability that the testimony the witness would have provided would have led to a different outcome at trial. **Commonwealth v. Dennis**, 950 A.2d 945, 961 (Pa. 2008).

In this respect, a failure to investigate and interview a witness claim overlaps with declining to call a witness since the petitioner must prove: (i) the witness existed; (ii) the witness was available to testify; (iii) counsel knew of, or should have known of, the existence of the witness; (iv) the witness was willing to testify; and (v) the absence of the testimony was so prejudicial as to have denied the defendant a fair trial. **See Commonwealth v. Dennis**, 17 A.3d 297, 302 (Pa. 2011) (discussing failure to interview and call an alibi witness).

Appellant's argument fails for myriad reasons. First, he has failed to develop his argument on the issue. *See Steele*, *supra*. Second, he did not indicate in his *pro se* petition the names of three of the witnesses he proffered after counsel was permitted to withdraw. Thus, he could only preserve this aspect of his claim by arguing both in his response to his 907 notice, and on appeal, that PCRA counsel was ineffective in not discussing the matter with Appellant to learn of these witnesses. *Cf. Commonwealth v. Rykard*, 55 A.3d 1177 (Pa.Super. 2012). Appellant has not leveled any argument on appeal that PCRA counsel should have included witness certifications for these additional witnesses or that Appellant told him of these witnesses and their proffered testimony.[8]   Further, Appellant's proffers as to Ms. Moon and Ms. Johnson do not suggest that they would have offered testimony different from that of Appellant's actual witnesses,

---

[8]  We recently addressed a conflict between *Commonwealth v. Brown*, 767 A.2d 576 (Pa.Super. 2001), and *Commonwealth v. McLaurin*, 45 A.3d 1131 (Pa.Super. 2012), on whether a defendant must submit witness certifications or affidavits to be entitled to an evidentiary hearing for failure-to-present-witness claims. *See Commonwealth v. Pander*, 2014 PA Super 201 (*en banc*). In doing so, we rejected the *McLaurin* panel's holding on the issue and held that witness certifications, including *pro se* certifications authored by the petitioner, may be sufficient. Instantly, Appellant filed unsigned witness certifications that he authored **after** PCRA counsel was permitted to withdraw. Neither party discusses or argues these cases, nor did the PCRA court rely on *McLaurin* or *Brown* to reject Appellant's position. Thus, it would be improper to deny relief based on any perceived certification defect. *See Pander*, *supra*; *see also Commonwealth v. Robinson*, 947 A.2d 710, 711 (Pa. 2008) (*per curiam*).

and we agree with the Commonwealth that these offers of proof are insufficient to warrant a finding of prejudice.

As to Mr. Hutchinson and Ms. Nija, the Commonwealth is correct that the testimony Appellant indicates that they would provide is substantially similar to evidence that was introduced at trial. Not only did Officer Langham testify as to the white car, so did Ms. Washington. Thus, Appellant cannot establish prejudice. With respect to the 911 operator, the issue fails for similar reasons. Since the 911 tape was introduced at trial, any testimony by the operator would have been cumulative and unnecessary. Trial counsel could not be ineffective for failing to call this witness. This leaves Ms. Coldren. Ms. Coldren's proposed testimony, as set forth in Appellant's response to the court's Rule 907 notice of dismissal, is that she witnessed twenty-five people in the area of the shooting, all but two of whom were males and that two men were carrying handguns.[9] This evidence actually contradicts Appellant's defense at trial insofar as his sister and cousin testified to the presence of numerous women, namely, the family that testified against Appellant. Further, the Commonwealth's evidence did reveal that two separate firearms had been fired in the area and Ms. Mathis testified that more than one person was shooting. ***See*** 6/13/06, at 12

_____

[9] Appellant presented a similar argument in complaining about trial counsel immediately after his trial. There, he referred to the witness as Kelly Goldrin, and that this woman saw five men with handguns. This was the point in which the trial court erroneously *sua sponte* awarded a new trial.

- 15 -

("They was shooting."); *id*. at 26 ("They was shooting at the girls."). Ms. Mathis' daughters, however, only testified to seeing Appellant with a gun.

As discussed, Appellant did reference Ms. Coldren in his *pro se* petition, and the trial record before his PCRA filings reveals what he believed her testimony would have been. Nonetheless, Appellant does not attempt to show prejudice in his brief, nor is the evidence itself exculpatory. Assuming Ms. Coldren did not see Appellant with a weapon and observed two different individuals with guns does not *ipso facto* mean that Appellant did not have or fire a gun. Moreover, the proffer as to seeing only males is highly inconsistent with the testimony of the remaining witnesses, including Appellant's own defense witnesses. In this respect, Ms. Williams testified that a woman standing by a black truck had a handgun and that a group of women were in the area. Ms. Washington testified that she observed girls with three guys and that the shooting emanated from a white car. Appellant has failed to demonstrate that he is entitled to relief.

Appellant also argues that trial counsel was ineffective for stipulating that Appellant's mother's testimony would be substantially similar to that of his prior two witnesses. Again, Appellant does not meaningfully develop this claim. For this reason alone his issue would fail. **See Steele**, **supra**. Furthermore, his position is entirely without merit. Appellant does not suggest that his mother's testimony would have been different from his

witnesses. Allowing Appellant's mother to testify would only have added testimony already received by the court; accordingly, stipulating to the introduction of what his mother would state is not ineffective assistance of counsel.

Additionally, Appellant maintains that trial counsel was ineffective for not orally seeking a motion for extraordinary relief based on insufficient evidence. He also, in boilerplate fashion, alleges that cross appeal appellate counsel was ineffective for not pursuing trial counsel's ineffectiveness. In one sentence, he also avers that sentencing counsel were ineffective for not filing a post-sentence motion. Lastly, he asserts that direct appeal counsel was ineffective for not litigating a post-sentence motion. These issues each are underdeveloped, waived, and lack arguable merit.

While ineffectiveness claims are distinct from the underlying merits of the claims from which they are derived; *see Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005), an ineffectiveness issue fails where the merits-based position is without merit. *See id*. This Court previously concluded that Appellant's convictions were supported by sufficient evidence. Thus, trial counsel cannot be ineffective for not arguing a sufficiency claim in an oral motion for extraordinary relief. Further, an oral motion for extraordinary relief is not the appropriate mechanism for advancing run-of-the-mill sufficiency of the evidence arguments.

Next, cross-appeal counsel cannot be ineffective for not litigating the effectiveness of trial counsel during that appeal because our Supreme Court has held that such claims must be deferred to PCRA review absent certain conditions not pertinent herein. *See Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). In regards to sentencing counsel, Appellant does not even attempt to articulate any argument as to what manner his attorneys were ineffective. As to direct appeal counsel, Appellant suggests that he should have litigated trial counsel's ineffectiveness via the *Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003) exception to *Grant*, *supra*. However, counsel was not appointed until after the filing of Appellant's direct appeal. Hence, he could not have filed such a motion.

Appellant's second issue pertains to the sufficiency of the evidence. These claims were previously litigated during his prior direct appeal; therefore, they fail. 42 Pa.C.S. § 9544(a). Appellant's final issue is not separately argued in his brief and is intermingled with his arguments as to his sufficiency positions. Insofar as Appellant's arguments concern the sufficiency of the evidence, they are either previously litigated or waived to the extent he advances new sufficiency arguments. For all the aforementioned reasons, we affirm.

Order affirmed.

Judgment Entered.

- 18 -

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2014