J-S66019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WILLIAM R. LANDIS, JR., | |
| Appellee | No. 28 MDA 2016 |

Appeal from the PCRA Order December 18, 2015
In the Court of Common Pleas of Berks County
Criminal Division, at No(s): CP-06-CR-0005405-2009

BEFORE: BOWES, J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 30, 2016**

This is an appeal by the Commonwealth from the order granting William R. Landis Jr., ("Landis") a new trial in response to his first timely petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court summarized the pertinent facts as follows:

> On October 28, 2009, at approximately 9:20 p.m., Berks County Radio dispatched Spring Township police officers to [Landis's] residence to investigate a possible shooting. [Landis] had called to report that a woman had been shot. [Landis's] wife was found dead on the second floor from a gunshot wound to the head. While performing a clearing operation of the residence, officers discovered [Landis] barricaded in the basement. [He] had a knife and two guns in his possession and threatened to shoot anyone who came down into the room. [Landis] became increasingly intoxicated as the evening progressed. Throughout the evening, [he] expressed suicidal ideas and asked about his wife's condition.

PCRA Court Opinion, 12/18/15, at 1. Appellant ultimately surrendered to the police and was charged with the murder of his wife as well as various charges as a result of his standoff with the police. Although Landis was to be tried separately on the latter charges, the trial court permitted the Commonwealth to present testimony regarding the standoff as evidence of Landis's consciousness of guilt. Landis did not testify, but presented fifteen character witnesses.

On April 5, 2013, a jury convicted Appellant of first-degree murder, and the trial court sentenced him to life in prison. Appellant filed a timely appeal to this Court. In an unpublished memorandum filed on April 10, 2014, we affirmed Landis's judgment of sentence. *See Commonwealth v. Landis*, 1018 MDA 2013 (Pa. Super., filed April 10, 2014). Landis did not file a petition for allowance of appeal.

On December 22, 2014, Appellant filed a timely counselled PCRA petition in which he asserted that his trial attorneys were ineffective because: 1) "despite sensational pre-trial publicity slanted toward conviction [that] was so extensive, sustained and pervasive that the community was saturated with it, there was never a motion to change venue or to enlist an out-of-county venire;" 2) "despite a defense expert prepared to testify that [he] lacked the requisite intent necessary to support a finding of guilt for first degree murder, trial counsel failed to present the expert and failed to articulate a clear diminished capacity defense at trial;" and 3) "trial counsel failed to collectively investigate the case before trial, failed to prepare [him]

- 2 -

for trial, failed to properly prepare witnesses to testify, and, despite having received $250,000 to represent [him] 'through the Common Pleas stage,' demanded an additional $50,000 on the first day of trial under threat of withdrawal from the case as evincing a decision not to present any defense at all." PCRA Petition, 12/22/14, at 3-4. In addition, Landis claimed that his appellate counsel was ineffective for failing to raise an issue regarding the denial of a mistrial in his statement of errors complained of on appeal, thereby resulting in waiver.

The PCRA court held evidentiary hearings over two days in June 2015, and the parties agreed to file written closing arguments. By opinion and order entered December 18, 2015, the PCRA court granted Landis a new trial based on his claim that trial counsel failed to present the available expert testimony in support of a diminished capacity defense. This timely appeal follows. The Commonwealth raises the following issue on appeal:

A. Did the PCRA court err in granting [Landis] PCRA relief after finding [his] trial counsel ineffective for deciding not to call a psychiatrist who would have offered an opinion to the jury that [Landis] was acting under diminished capacity and/or voluntary intoxication when he murdered his wife, despite evidence at the PCRA hearing that:

1. Trial counsel's strategy was based on Landis's own decision to seek a full acquittal?

2. Trial counsel's strategy was based upon avoiding a second mental health evaluation by a Commonwealth expert which would have heightened a risk of further inconsistencies in the version of events provided by [Landis]?

3. Trial counsel's strategy was based upon an informed decision to prevent the jury from hearing testimony concerning

> [Landis's] unfavorable admissions to the defense expert which
> included heavy drug use and shooting the firearm that killed
> his wife?

Commonwealth's Brief, at 4-5.[1]

This Court has recently summarized the applicable standard of review as follows:

> We review an order granting a petition under the PCRA in
> the light most favorable to the prevailing party at the PCRA
> level. This review is limited to the findings of the PCRA court and
> the evidence of record. We will not disturb a PCRA court's ruling
> if it is supported by evidence of record and is free of legal error.
> Further, we afford great deference to the factual findings of the
> PCRA court and will not disturb those findings unless they have
> no support in the record. Instantly, [Landis], the defendant, was
> the prevailing party at the PCRA level. Thus, we must review the
> record in a light most favorable to him, not the Commonwealth.

***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa. Super. 2013) (*en banc*) (citations omitted). In addition, we note that PCRA court made credibility determinations in Landis's favor. "We are bound by a PCRA court's credibility decisions." ***Id***. at 708 (citation omitted).

To be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence

---

[1] The Commonwealth also raises issues regarding Landis's other claims of trial counsel's ineffectiveness as enumerated above. The PCRA court did not grant relief on any of these claims, and Landis has not filed a cross-appeal. Thus, although both the PCRA court and the parties discuss these additional claims, we confine our review to the only reason given by the trial court for granting post-conviction relief in the form of a new trial.

arose from one or more of the errors enumerated in § 9543(a)(2) of the PCRA. One such error involves the ineffective assistance of counsel.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *See* 42 Pa.C.S.A. § 9543(a)(2)(ii). This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *See Stewart*, 84 A.3d at 706. In this context, a finding of "prejudice" requires the petitioner to show "there is a reasonable probability that, but for the error of counsel, the outcome of the proceeding would have been different." *Commonwealth v. Stevens*, 739 A.2d 507, 512 (Pa. 1999) (citation omitted). The law presumes counsel's effectiveness; it is the petitioner's burden to prove the contrary. *See Commonwealth v. Payne*, 794 A.2d 902, 906 (Pa. Super. 2002). Counsel does not render ineffective assistance for failing to pursue a meritless claim. *See id*.

In order to establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

***Commonwealth v. Hall***, 867 A.2d 619, 629 (Pa. Super. 2005) (citation omitted).

In its opinion accompanying its order granting Landis a new trial the PCRA court discussed the evidence presented at the PCRA hearings. The court summarized the evidence relevant to Landis's claim of failure to call the defense expert as follows:

At the request of [Landis's] pretrial counsel, Larry A. Rotenberg, M.D., a criminal forensic psychiatrist, examined [Landis] for a total of six hours at Berks County Prison (BCP) during March 2010. Dr. Rotenberg also interviewed [Landis] for one hour on April 30, 2010 and an additional hour on May 12, 2010.

Dr. Rotenberg testified that [Landis] had a history of excessive use of drugs and alcohol. Although [Landis] thought about AA meetings, he never went to any. According to his report, [Landis] attended AA meetings at BCP. [Landis] told Dr. Rotenberg that he had used cocaine on the night of the incident. His urine was positive for cocaine at the time of his arrest. He had used more than his usual amount. His average use was between $200.00 and $350.00 per week. He had used cocaine on and off for five years. He smoked marijuana between the ages of nineteen and twenty-five and had taken "speed pills" approximately twenty-five years before his examination by Dr. Rotenberg. At the time of his arrest, [Landis] was fifty-one years old.

Dr. Rotenberg concluded that [Landis] did not have the capacity to form the specific intent for the commission of murder. [Landis] was intoxicated with a Blood Alcohol Content of .230, nearly three times the definition of intoxication in the Commonwealth of Pennsylvania. According to Dr. Rotenberg,

- 6 -

[Landis's] behavior on the night of this incident fits the criteria for diminished capacity.

Dr. Rotenberg also believed that [Landis] fits the M'Naghten criteria for not guilty by reason of insanity with regard to the charges arising from the standoff with the police when he was in the basement. [Landis] had taken two sleeping pills and a Xanax. He was drowsy and in such a state of disorganization, that he was incapable of understanding that his actions were wrong. After he was incarcerated, the prison psychiatrist found that [Landis] had disorganizing anxiety. Dr. Rotenberg testified that it was "impossible" to compartmentalize the events of the shooting of [Landis's] wife and the subsequent basement standoff with the police.

Dr. Rotenberg did not testify at [Landis's] trial. He was astonished that [Landis's] trial attorneys did not use him as a witness. He believed that his report had a chance of being of significant assistance to [Landis]. Dr. Rotenberg believes that he may have had a telephone call with trial counsel. The only correspondence [from trial counsel] he could recall was an email, stating that he would not be called to testify, sent to him right before [Landis's] trial.

Dr. Rotenberg opined that [Landis's] behavior had been so bizarre, so delusional, so purposeless, and so out of keeping with his personality when he was not intoxicated and on drugs, that it only showed that he wanted his own annihilation. Dr. Rotenberg made his medical/psychiatric conclusions to a reasonable degree of medical certainty.

According to Dr. Rotenberg's report, by the time of the murder, [Landis] had consumed three doubles of [Ketel] One vodka. Although the police said four shots were fired, [Landis] remembered only two shots. [Landis] told Dr. Rotenberg that he has no recollection of shooting at the police, "It is as if to him it never happened" (Dr. Rotenberg's Report, [at] 12). [Landis] had wanted to hurt himself, but he told Dr. Rotenberg that he would never want to harm anyone else.

Both trial counsel, Fortunato N. Perri, Jr., Esquire, and William J. Brennan, Esquire, testified at the PCRA hearing[s]. Both could not recall details of Dr. Rotenberg's report. Mr. Brennan testified that some things were good in the report, and some things were not. Mr. Perri disagreed with Mr. Brennan that overall Dr. Rotenberg's conclusions were helpful. The attorneys

agreed that a classic M'Naghten defense could result in an acquittal.

Mr. Perri further testified that the decision not to call Dr. Rotenberg was made sometime in September 2012, six months prior to the actual trial conducted in April 2013. Mr. Perri stated that his concern with the report was that [Landis] had made admissions to Dr. Rotenberg that he had not wanted the jury to hear. He had talked to Dr. Rotenberg. He testified that the attorneys had agreed not to call him because there had been inconsistencies between [Landis's] statements to Dr. Rotenberg and to them. Mr. Brennan was also concerned that the Commonwealth would have called an "anti-Rotenberg" [expert] if trial counsel had used Dr. Rotenberg.

[Landis] agreed with the decision not to call Dr. Rotenberg because he had thought that he would testify. He did not testify at his trial.

\*\*\*

Jonathan Kurland, Esquire, was lead counsel for the Commonwealth in [Landis's] trial. . . . Mr. Kurland wanted a rebuttal expert opinion. He had scheduled an examination of [Landis] in late March 2013, but had canceled it after receiving an email from Mr. Perri stating that Dr. Rotenberg was not going to testify.

Mr. Perri also testified that his work is ninety-five [percent] criminal defense. He had informed [Landis's] family that Mr. Brennan had not been needed, but it had been up to them if they wanted both attorneys. He believed that there had been eleven visits to [Landis] from one of the two attorneys; however, his notes are different than the jail records.

As he had talked to [Landis], [Landis's] version of the incident had changed. He therefore concluded that no versions were justified and that [Landis] had no defense. [Landis] had refused to accept a manslaughter theory; he had wanted complete acquittal. Attorney Perri had not believed that there was any chance of winning the case if [Landis] had testified. He had not believed that [Landis] could have gotten through direct examination without admitting to murder. He had also been concerned about [Landis's] cocaine use.

\*\*\*

- 8 -

The attorneys had not hired any experts. Attorney Brennan had believed that Dr. Rotenberg's conclusions were helpful, but he had been concerned with [Landis's] long-term alcohol and drug abuse.

Mr. Brennan had thought that [Landis] could have gotten through direct examination but would have folded on cross examination. Therefore, he had believed that it would have been too risky to have [Landis] testify.

[Landis] . . . had wanted to testify but had listened to his attorneys' advice and had not testified on his [own] behalf.

PCRA Court Opinion, 9/18/15, at 2-9.

Based on this testimonial evidence, the PCRA court concluded:

This court finds that trial counsel had no reasonable basis for not having Dr. Rotenberg testify. The potential damage of revealing through Dr. Rotenberg a history of drug and alcohol use does not outweigh the benefit of establishing a diminished capacity defense to the crucial element of specific intent to commit murder.

***

There was little likelihood of avoiding a history of either drug or alcohol use being revealed to the jury in the course of the Commonwealth's through presentation of evidence. Further, Dr. Rotenberg is an experienced forensic physiatrist who has performed thousands of psychiatric evaluations. He has testified many times for both the Commonwealth and defense. He is a compelling witness, and there is a reasonable probability that his testimony could have resulted in a conviction to Third rather than First Degree Murder.

Most criminal trials have "anti-Rotenbergs" testifying for the [Commonwealth]. If the presence of an opposing psychiatrist were the main issue, a diminished capacity defense could not be presented. To avoid having a Commonwealth expert testify is not sufficient reason to eliminate the best witness the defense had.

Mr. Brennan testified as to the apparent dangers of opening the door for anti-Rotenberg testimony. Although the Commonwealth had scheduled an evaluation of [Landis] by its

anti-Rotenberg expert, it was cancelled when the defense notified Mr. Kurland that they would not be calling Dr. Rotenberg. Therefore, missing from this entire analysis is a very crucial document—how helpful or harmful to the defense would this anti-Rotenberg report have been if the Commonwealth would have hired its own expert to evaluate [Landis] and issue his/her report.

Did trial counsel have a valid strategy to defend their client? First and foremost, trial counsel did not present any testimony to contradict any evidence that was presented by the Commonwealth. Second[,] the evidence of [Landis] shooting and killing his wife is overwhelming. Third, defense had everything to gain and nothing to lose in presenting Dr. Rotenberg's testimony. [Landis] needed his testimony to present [Landis's] lack of intent to kill, the crucial element the defense was striving to disprove to raise a reasonable doubt that if and when [Landis] killed his wife he was not guilty of all the necessary elements of murder of the first degree. Without [Dr. Rotenberg's] testimony, [Landis] had no real defense. With it, he had a renowned forensic psychiatrist who issued a 25 page report concluding diminished capacity of [Landis] to possess the specific intent to kill.

[Landis] had no defense against the overwhelming Commonwealth evidence of First Degree Murder, especially without [Landis] having taken the stand to testify[.]

\*\*\*

Trial counsel contended [Landis] had changed his story over time; specifically, that [Landis's] version changed from the time that he had talked to Dr. Rotenberg. That fact could actually help [Landis] because it could be convincing evidence of his diminished capacity at the time of the incident. Dr. Rotenberg examined [Landis] closer to the time of the shooting than counsel did. Dr. Rotenberg did not simply rely on [Landis's] account of that evening. He consulted medical records, including those of the prison psychiatrist who had examined [Landis] shortly after his arrival at BCP. He also reviewed the incident reports, conducted interviews with [Landis's] family and considered the results of a battery of psychological tests performed independently by an experienced psychologist, Dr. Peter Thomas.

*Id*., at 12-15.

The PCRA court further concluded that Dr. Rotenberg's testimony was necessary to counter the Commonwealth's presentation of multiple police witnesses regarding the standoff in an attempt to demonstrate consciousness of guilt. The PCRA court reasoned:

Dr. Rotenberg was also prepared to testify to a "M'Naghten defense" contrary to the Commonwealth's theory that the basement standoff showed [Landis's] consciousness of guilt for the killing of his wife. Dr. Rotenberg's report also supported these expert opinions to a medical degree of certainty.

\*\*\*

Dr. Rotenberg, as stated previously, also concluded that [Landis] was legally incapacitated, fitting the classic M'Naghten defense, during the standoff in the basement. Thus, this evidence controverted the Commonwealth's argument of [Landis's] consciousness of guilt. The Commonwealth found it extremely critical to its case in chief to argue to the jury [Landis's] consciousness of his own guilt to the murder by his subsequent standoff with the police. This issue is so critical to the Commonwealth that the Commonwealth stated its case was "substantially handicapped" by this court previously granting habeas corpus relief to a single charge involving the basement standoff.

[Landis's] consciousness of guilt was so important to the Commonwealth that it filed an appeal to the Superior Court challenging this court's habeas corpus ruling. Further when a Superior Court panel ruled against the Commonwealth and affirmed this court's habeas corpus ruling[,] the Commonwealth appealed for a review by the entire Superior Court [which reversed. *See generally*, *Commonwealth v. Landis*, 48 A.3d 432 (Pa. Super. 2012) (*en banc*).]

Thus, Dr. Rotenberg's expert opinion was essential to the most serious charges against [Landis], First Degree Murder of his wife. If the jury had heard that [Landis] was not responsible for his actions during this time in the basement, there is a reasonable likelihood that the outcome would have been

- 11 -

different; the jury would have heard an expert testify that [Landis] was incapable of knowing what he had been doing and therefore his actions did not mean that he was conscious of his guilt in killing his wife. The defense would argue that, if believed by the jury, it explained that he was not consciously fighting the police solely to avoid being captured and severely punished for his first degree murder of his wife. By defeating a consciousness of guilt it proves that [Landis] did not have the requisite intent, knowledge or state of mind to kill his wife by his actions in the basement.

*Id*., at 15-16.

Following the above discussion, the PCRA court concluded:

Consciousness of guilt of having killed his wife was used against [Landis] by the Commonwealth as evidence to prove his guilt of First Degree Murder. The jury was free to reject that argument. Expert testimony of Dr. Rotenberg was available to show to a degree of medical certainty that [Landis] was legally incapacitated to even have known that he killed his wife when he was in the basement holding off the police. This testimony, although available, was not presented by defense [counsel].

The second legal defense, diminished capacity to possess the conscious intent to kill his wife, was also available through Dr. Rotenberg.

The difference between first degree and third degree is, of course, very significant: mandatory life without parole versus a maximum of twenty to forty years with parole. Still trial counsel chose not to call a key witness to this very issue which goes directly to diminished capacity to have the specific intent to commit first degree murder. Trial counsel did not even meet with Dr. Rotenberg or talk with him beyond perhaps one telephone call. Considering the evidence against [Landis], there is far less risk that Dr. Rotenberg's testimony could have harmed [him], compared to the greater benefit to be gained by presenting Dr. Rotenberg's expert testimony to the jury.

*Id*., at 16-17.

Our careful review of the record supports the PCRA's conclusions that Landis's claim that failing to call Dr. Rotenberg as a witness at his murder trial was of arguable merit, that trial counsel had no reasonable basis for not calling him, and that Landis sufficiently demonstrated how he was prejudiced by its omission. As noted above, the Commonwealth presents several reasons why the PCRA court's conclusion is in error. We address each claim separately.

The Commonwealth first contends that because Landis desired an outright acquittal on all charges, trial counsel cannot be ineffective for failing to pursue their client's wishes. We agree with the Commonwealth that if the record establishes the defendant wanted only such a result, ineffectiveness is not established. **See**, **e.g.**, **Commonwealth v. Spotz**, 47 A.3d 63, 91 (Pa. 2012) (explaining that our Supreme Court has "consistently declined to hold that trial counsel was ineffective for failing to advance a defense that directly and irreconcilably conflicted with the accused's claims of innocence"). Our review of the PCRA hearing in this case, however, reveals that while both trial counsel unequivocally testified that Landis wanted nothing other than a full acquittal, the same cannot be said of Landis's own testimony.

When questioned by PCRA counsel, Landis testified that he "had basically two defenses. One would be Mr. Rotenberg's report or testifying on my own behalf, and the jurors wanted to hear from me." N.T., 6/29/15, at

- 13 -

193. According to Landis, "if [he] was going to be testifying, we would need - - we wouldn't need [Dr. Rotenberg's] report" but if he was not going to testify "[t]hen you need the report." *Id*. at 197. Landis further testified that his one adult daughter "had mentioned something that, you know, the attorneys were saying to them about me not going on the stand and that I should listen to my attorney." *Id*. Although Landis expected to be called to testify up until the last day of trial, he informed the trial court of his decision not to, and relied upon counsel's advice. *See id*. at 199-202; 214-15.

Upon cross-examination by the Commonwealth, Landis originally conceded that he was seeking an acquittal. *See id*. at 217. He then stated that his trial counsel never understood how the struggle over the gun occurred, and that he never intentionally shot his wife. When asked whether his desire for going into trial "was to argue a lesser type of murder or was it for you to be acquitted of all the charges[,]" Landis answered that he "[j]ust wanted the truth to come out." *Id*. at 219. When the Commonwealth objected to this answer as non-responsive, and asked Landis again whether he told his attorneys he wanted a not guilty verdict, Landis responded: "I wanted the truth out, yes." *Id*. at 220.

The PCRA court interpreted Landis's testimony as stating that Landis, as with any criminal defendant, would ultimately desire a not guilty verdict. Nevertheless, the PCRA court noted that such an expectation "was completely contrary to the evidence." PCRA Court's Opinion, 3/4/16, at 5.

- 14 -

Landis informed the court of his alternative defenses—call Dr. Rotenberg or testify on his own behalf. Trial counsel presented neither. Thus, as stated by the PCRA court, the failure to meet with Dr. Rotenberg and then "call [him] as a witness . . . denied [Landis] the opportunity of establishing any defense at all." *Id*. at 6. Given these circumstances, we agree that Landis is entitled to a new trial. ***See***, ***e.g.***, ***Commonwealth v. Legg***, 711 A.2d 430 (Pa. 1998) (rejecting this Court's reversal, based upon the defendant's desire to seek an acquittal, of the PCRA court's grant of new trial where trial counsel was ineffective for failing to call an expert when available expert testimony indicated that the defendant was suffering from major depression and anxiety that would have prevented her from rationally forming the specific intent to kill).

The Commonwealth next claims that trial counsel's failure to call Dr. Rotenberg was a reasonable strategy because "avoiding a second mental health evaluation by a Commonwealth expert that would have heightened a risk of further inconsistencies" in Landis's version of the events. Commonwealth's Brief, at 27 (emphasis omitted). Citing Mr. Brennan's testimony, it posits that "the Commonwealth's ability to call an "anti-Rotenberg" was enough of a deterrent to not use Dr. Rotenberg at all." ***Id***.

Like the PCRA court, we find this claim to be speculative, since trial counsel did not even have meaningful contact with the expert. As stated by the PCRA court:

This Court found that any harm to [Landis] from the risk of sustaining [Landis's] version of the events to be *de minimus*. First, [Landis's] version of the events reported to Dr. Rotenberg was closer in time to the shooting. Second, the version was supported by competent expert evidence and probative facts [presented by the Commonwealth at trial]. Any revised versions would have lent credence to [Landis's] testimony of diminished capacity. Even if that failed, it would have been harmless to the outcome because [Landis] had already admitted that he had shot his wife. He either did it intentionally or accidentally. The worst case scenario that would have resulted by the presentation of a [Commonwealth] expert witness was that [Landis] shot his wife intentionally and thus was guilty of First Degree Murder, an already certain result with [Landis] having presented no evidence to contradict the Commonwealth's evidence. This concern was therefore specious.

PCRA Court Opinion, 3/4/16, at 7.

In its final attempt to establish error with regard to the PCRA court's award of a new trial based upon trial counsel's ineffectiveness in failing to call Dr. Rotenberg to testify at trial, the Commonwealth contends that "[c]ounsel's strategy was based upon on an informed decision to prevent the jury from hearing testimony concerning [Landis's] unfavorable admissions to [Dr. Rotenberg] which included the shooting of the firearm." Commonwealth's Brief at 28 (emphasis omitted). Citing again the PCRA hearing testimony of trial counsel, the Commonwealth asserts that trial counsel did not want the jury to learn of Landis's long term drug and alcohol use because "jurors have a problem with [evidence of such conduct] sometimes." *Id*. at 29. While such evidence is generally undesirable, it would have been consistent with, and provide the basis for, a diminished capacity defense.

Our review of the record further supports the PCRA court's conclusions regarding Landis's admission to Rotenberg that he shot the firearm. The court explained:

> [Landis's] admission to shooting the firearm was already before the jury from the very beginning of the trial. Dr. Rotenberg, on the other hand, could have explained [Landis's] mental capacity and confusion at the time of the shooting and afterwards, during the standoff. These additional details, if proved to the jury, would have changed the result of the trial.

PCRA Court Opinion, 3/4/16, at 7.

In sum, because our review of the record supports the PCRA court's finding of trial counsel's ineffectiveness, we affirm the court's order granting Landis a new trial.[2]

Petition for remand denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2016

_____

[2] In light of our holding, we deny Landis's petition to remand the case so that the PCRA court can specifically state that it is vacating Landis's judgment of sentence. Such a result is implied by the PCRA court's grant of a new trial. Moreover, at a subsequent hearing on Landis's motion for bail, Landis's counsel conceded that, as Appellant is still facing a first-degree murder charge bail is prohibited by both statute and our state constitution. **See** N.T. 2/23/16, at 3; 42 Pa.C.S.A. § 5701; and Article 1, Section 14 of the Pennsylvania Constitution.