J-S83030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LOUIS RODERICK OGDEN | : | |
| | : | |
| Appellant | : | No. 2315 EDA 2017 |

Appeal from the PCRA Order June 26, 2017
In the Court of Common Pleas of Wayne County Criminal Division at No(s):
CP-64-CR-0000319-2014

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 05, 2018**

Appellant, Louis Roderick Ogden, appeals from the order entered on June 26, 2017, which denied him relief under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546.  We affirm.

We have previously summarized the underlying facts of this case:

> On the morning of June 20, 2014, Rebecca Pisall, Appellant's 20-year-old niece, arrived at Appellant's home in Lake Ariel to purchase heroin from Appellant.  After a brief conversation in the kitchen with Rebecca, Appellant's daughter, Mary Langendorfer, who lived with Appellant, woke Appellant up and told him Rebecca wanted to purchase heroin.  Appellant then tossed a small black bag containing heroin at Mary and told Mary to "take care of it." Mary took the heroin into the kitchen, gave Rebecca three bags of heroin in exchange for [$60.00], put the money in the black bag, and returned the black bag to Appellant.
>
> When Mary returned to the kitchen, Rebecca claimed that the bags were empty and demanded her money back.  Mary returned to Appellant and, after learning of Rebecca's complaint, Appellant pulled a loaded gun from underneath

his pillow, walked into the kitchen, pointed the gun at Rebecca, and fatally shot Rebecca in the forehead from [four to eight] inches away. Appellant then pointed the gun at Mary's throat and said, "it just went off" in an "angry tone like he was telling [Mary] what to do."

Appellant called 911 shortly thereafter and Appellant, who was very upset, admitted during the call that he had shot Rebecca in the head. Appellant provided a Mirandized[fn.1] statement to Pennsylvania State Trooper Sharon Palmer, admitting all of the above facts but stating that he had: (1) traveled to Philadelphia the night before the shooting to purchase heroin; (2) used [20] bags of heroin while in Philadelphia; (3) returned to his house in Wayne County and went to sleep; [and,] (4) only wanted to scare Rebecca when the gun went off accidentally. He also admitted to being familiar with guns and gun safety.

> [fn.1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

At Appellant's jury trial . . . , the Commonwealth presented testimony from Appellant's daughter Mary; 911 dispatcher Forest Mohn; Pennsylvania State Troopers Sharon Palmer, Gerald Gustas, and Sean Doran, and Corporal Michael Brown; [and,] forensic pathologist Dr. Gary Ross. The trial court admitted Appellant's statement to police into evidence. Appellant presented no evidence [during his case-in-chief].

On September 22, 2015, the jury convicted Appellant of first-degree murder[fn.2] and the trial court imposed the statutorily mandated sentence of life in prison [without the possibility of parole].[fn.3]

> [fn.2 18 Pa.C.S.A.] § 2502(a).

> [fn.3 42 Pa.C.S.A.] § 9711.

*Commonwealth v. Ogden*, 159 A.3d 39 (Pa. Super. 2016) (unpublished memorandum) at 1-3 (internal citations omitted).

We affirmed Appellant's judgment of sentence on October 11, 2016; Appellant did not file a notice of appeal with the Pennsylvania Supreme Court. *Id.* at 1-12.

On November 10, 2016, Appellant filed a counseled PCRA petition where he claimed, among other things, that his trial counsel was ineffective for:  1) failing to present expert and lay witnesses who would testify as to his diminished capacity due to voluntary intoxication; 2) failing to present a psychiatrist and toxicologist "to testify [regarding] the effect of drugs on [Appellant] as [to] the voluntariness of his confession to the police;" and, 3) failing to present a ballistics expert who would have testified that the shooting was accidental.  Appellant's PCRA Petition, 11/10/16, at 1-8.

On April 21, 2017, the PCRA court held an evidentiary hearing on Appellant's petition.  Appellant presented two witnesses during the hearing: Appellant's trial attorney, Steven E. Burlein, Esquire (hereinafter "Attorney Burlein"), and private investigator James Sulima (hereinafter "Investigator Sulima").

As Attorney Burlein testified, Appellant chose not to testify at trial because there was "a concern as to how he would testify."  N.T. PCRA Hearing, 4/21/17, at 5-6.  Attorney Burlein explained:

> we had a discussion throughout the case as to whether [Appellant] would or would not testify.  And shortly before [Appellant's case-in-chief], we would have started our case with him testifying, we went in the back room, in the back of the courtroom and had a discussion . . . and we had a discussion about whether he wanted to take the stand or

not. And [Appellant] gave a quote to the effect that he would come off the stand and bite the prosecutor on her neck. So, we decided that would be inappropriate on the stand if he wasn't going to handle himself any better than that. And we said, you know, if you don't take the stand, we have a problem with the intoxication defense. Well, essentially we have no intoxication defense, and he understood that . . . he essentially chose not to [testify].

*Id.*

Attorney Burlein testified that he investigated a voluntary intoxication defense for Appellant's case and, to that end, Attorney Burlein hired a psychiatrist named Dr. Carla Rodgers "to look into the effects of the drugs in [Appellant's] system." *Id.* at 6. Attorney Burlein testified that, after Dr. Rogers examined Appellant, she agreed to testify during the pre-trial suppression hearing. *Id.* at 7-8. However, Dr. Rogers refused to opine on whether, on the night of the murder, Appellant exhibited diminished capacity due to voluntary intoxication and she further refused to testify on Appellant's behalf at trial. As Attorney Burlein testified:

> [Dr. Rogers] said that she could testify insofar as an [o]mnibus [pre-trial motion] hearing and that's where her testimony was used. However, she said she would not testify at trial, due to [Appellant's] credibility. And[,] in fact, her wording to me was, he is a world class B.S. artist, so I cannot believe what he's telling me and I can't quantify or qualify what was in his system and the effects it would have had on him.

*Id.* at 7.

Attorney Burlein also testified that, in preparation for trial, he hired Investigator Sulima to investigate the case. However, Attorney Burlein

- 4 -

chose not to call Investigator Sulima as a witness at trial because "the sum total of the investigation produced negligible results." *Id.* at 14.

Finally, Attorney Burlein testified that he did not call a ballistics expert because "there was really no question as to how . . . the incident occurred. There was no question as to what weapon was used or the bullet that pierced the skull. There was no question as to any of that." *Id.* at 33.

Following Attorney Burlein's testimony, Appellant called Investigator Sulima as a witness at the hearing. Investigator Sulima testified that he investigated the case at the behest of Attorney Burlein. *Id.* at 40. As Investigator Sulima testified, he began his investigation by interviewing Appellant. According to Investigator Sulima, during the interview, Appellant told him that "the gun accidentally went off" and that, on the night before the shooting, Appellant had ingested an unspecified amount of heroin. *Id.* at 44-45.

Investigator Sulima testified that, after interviewing Appellant, he interviewed a number of other individuals; however, Investigator Sulima testified, "the witnesses that I spoke to, I felt, did not help [Appellant] in any way." *Id.* at 51.

On June 26, 2017, the PCRA court denied Appellant PCRA relief and Appellant filed a timely notice of appeal. Appellant raises one broadly stated claim on appeal:

> Did the [PCRA] court err and abuse its discretion, in denying [Appellant's] petition for post-conviction relief?

Appellant's Brief at 4.

We "review an order granting or denying PCRA relief to determine whether the PCRA court's decision is supported by evidence of record and whether its decision is free from legal error." ***Commonwealth v. Liebel***, 825 A.2d 630, 632 (Pa. 2003).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth v. Jones***, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (some internal quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." ***Id.***

Further, to prevail on a claim that counsel was ineffective for failing to call a witness at trial, Appellant must establish that: "(1) the witness[] existed; (2) the witness[ was] available to testify; (3) counsel knew, or should have known, the witness[] existed; (4) the witness[ was] willing to testify; and (5) the absence of the witness['] testimony was so prejudicial that it denied [Appellant] a fair trial." ***Commonwealth v. Solano***, 129 A.3d 1156, 1166 (Pa. 2015).

A review of Appellant's brief reveals the following claims: 1) trial counsel was ineffective for failing to present a toxicologist who would testify as to Appellant's diminished capacity due to voluntary intoxication; 2) trial counsel was ineffective for failing to present a ballistics expert who would testify that the firearm accidentally discharged; 3) trial counsel was ineffective for failing to present Appellant as a witness, so that Appellant could testify that he "used copious amounts of narcotics during the evening [] and early morning hours before the killing" and that he "had ingested drugs that he had on his person in the bathroom of the State Police Barracks" prior to confessing; 4) trial counsel was ineffective for failing to present Investigator Sulima to testify as to Appellant's ingestion of narcotics prior to the murder and in the State Police Barracks' bathroom; and, 5) trial counsel was ineffective for failing to present Appellant's parents as character witnesses at trial. *See* Appellant's Brief at 20-29.

We need not discuss Appellant's claims at length, as Appellant produced limited evidence during the PCRA hearing and, in so doing, failed to satisfy his burdens of production and persuasion on his ineffectiveness of counsel claims. Thus, we briefly dispose of Appellant's claims: 1) during the PCRA hearing, Appellant did not present a toxicologist or any other evidence to establish that, at the time of the murder, he suffered from diminished capacity due to voluntary intoxication (therefore, there is no arguable merit to Appellant's claim that trial counsel was ineffective for failing to present a toxicologist who would testify as to Appellant's

diminished capacity due to voluntary intoxication); 2) during the PCRA hearing, Appellant did not present a ballistics expert or any other evidence to establish that his firearm accidentally discharged (therefore, there is no arguable merit to Appellant's claim that trial counsel was ineffective for failing to present a ballistics expert who would testify that the firearm accidentally discharged); 3) Appellant did not testify during the PCRA hearing and there was no evidence that Appellant was willing to testify at trial (therefore, trial counsel was not ineffective for failing to present Appellant's testimony at trial or during the pre-trial suppression hearing); 4) Investigator Sulima's proposed testimony regarding Appellant's ingestion of narcotics prior to the murder and in the State Police Barracks' bathroom was inadmissible hearsay (therefore, trial counsel was not ineffective for failing to present Investigator Sulima as a witness at trial or in the pre-trial suppression hearing); and, 5) Appellant's parents did not testify at the PCRA hearing and no evidence exists as to whether they were willing to testify or as to their proposed testimony (therefore, trial counsel was not ineffective for failing to present Appellant's parents as character witnesses at trial).

All of Appellant's claims on appeal thus fail. We affirm the PCRA court's order, denying Appellant post-conviction collateral relief.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/5/18