J-S28001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| CARLOS SEBASTIAN | : |
| | : |
| Appellant | : No. 528 MDA 2022 |

Appeal from the PCRA Order Entered March 2, 2022
In the Court of Common Pleas of Adams County Criminal Division at No(s): CP-01-CR-0000264-2019

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: DECEMBER 28, 2022**

Appellant, Carlos Sebastian, appeals from the order entered on March 2, 2022, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The PCRA court briefly summarized the facts and procedural history of this case as follows:

> On June 6, 2019, [Appellant] was convicted on numerous criminal charges arising out of his prolonged course of sexual assaults against N.M.F. (hereinafter "Victim"), the minor daughter of [Appellant's] girlfriend[.] The assaults occurred when Victim was between 11 and 13 years of age and consisted of vaginal intercourse and oral sex.
>
> During the period when the assaults occurred, [Appellant] was living with [his girlfriend] and [her] three children, including Victim, in [his girlfriend's] residence [in] New Oxford, Adams County, Pennsylvania. The assaults occurred in various locations throughout the residence, including the bedroom Victim shared with [Appellant], [his girlfriend], and Victim's little brother.
>
> Attorney Kristen Rice (hereinafter "Attorney Rice" [or "trial counsel"]) represented [Appellant] at trial. At the conclusion of

trial on June 6, 2019, [a] jury found [Appellant] guilty of rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, IDSI with a person less than 16 years of age, statutory sexual assault, unlawful contact with a minor, and corruption of a minor.[1]

On August 29, 2019, Attorney David J. Foster ("Attorney Foster") entered his appearance on behalf of [Appellant]. On October 17, 2019, the [trial c]ourt sentenced [Appellant] to an aggregate term of 18 to 36 years' imprisonment in a state correctional institution. [Appellant] filed post-sentence motions, [that he] amended [] on October 30, 2019; [the trial c]ourt granted in part and denied in part [Appellant's] post-sentence motions on November 21, 2019. [Appellant] filed an appeal from the judgment of sentence on December 4, 2019, and the Superior Court of Pennsylvania denied his appeal on October 14, 2020. [Appellant] did not seek discretionary review in the Supreme Court of Pennsylvania.

Through Attorney Foster, [Appellant] timely filed [his first] PCRA [p]etition on March 19, 2021; a PCRA hearing was held before [the PCRA c]ourt on September 16, 2021. In his PCRA [p]etition, [Appellant] assert[ed] Attorney Rice provided him ineffective assistance of counsel by failing to take various actions to impeach Victim's credibility at trial.

PCRA Court Opinion, 3/2/2022, at 1-2 (original footnotes incorporated into single footnote). By order and accompanying opinion entered on March 2, 2022, the PCRA court denied relief. This timely appeal resulted.[2]

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3123(a)(7), 3122.1(b), 6318(a)(1), 6301(a)(1)(ii), respectively.

[2] Appellant, while still represented by counsel, filed a *pro se* notice of appeal on March 16, 2022. On March 28, 2022, Attorney Foster filed a notice of appeal on behalf of Appellant. A third notice of appeal was also mistakenly filed in this Court on April 4, 2022. Citing Pa.R.Crim.P. 120(A)(4) and Pa.R.A.P. 907(B), this Court entered orders on May 4, 2022 noting that Attorney Foster was still counsel of record and that Appellant could not represent himself *pro se* unless counsel withdrew. Following a hearing on
*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issues for our review:

A. Whether Appellant's trial [counsel] was ineffective under the state and federal constitutions for failing to attack the [Victim's] credibility by introducing the available and compelling evidence of her reputation in the general community for untruthfulness?

B. Whether Appellant's trial [counsel] was ineffective under the state and federal constitutions for failing to attack the [Victim's] credibility by introducing and exploiting the several and compelling material inconsistencies in her trial testimony?

C. Whether Appellant's trial [counsel] was ineffective under the state and federal constitutions for failing to attack the [Victim's] credibility by introducing the significant and compelling evidence of her animosity toward [Appellant], particularly emanating from Appellant's discovery of an inappropriate sexual relationship with a young man?

D. Whether the cumulative effect of Appellant's trial [counsel's] constitutional deficiencies in her representation, taken individually and collectively, deprived him of his state and federal right to the effective assistance of counsel as well as his state and federal right to a fair trial?

Appellant's Brief at 4-5 (complete capitalization omitted).

All of Appellant's appellate PCRA issues implicate the effectiveness of trial counsel. We employ the following standards:

*(Footnote Continued)* ───────────

May 31, 2022, the PCRA court determined that Appellant was entitled to court-appointed counsel and appointed Attorney Foster to continue representing Appellant. We ultimately dismissed the duplicative appeals. On March 29, 2022, the PCRA court filed a statement pursuant to Pa.R.A.P. 1925(a), indicating that it was relying upon its earlier decision entered on March 2, 2022 to support its denial of PCRA relief.

We must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party.

The PCRA court's credibility determinations, when supported by the record, are binding; however, this [C]ourt applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019) (citations

omitted).

Moreover,

[c]ounsel is presumed to be effective, and the petitioner bears the burden of proving that counsel's assistance was ineffective by a preponderance of the evidence.

To prevail on a claim of ineffective assistance of counsel, the petitioner must plead and prove the following three elements: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) petitioner suffered prejudice as a result of counsel's action or inaction. To establish prejudice, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Because a petitioner's failure to satisfy any of the above-mentioned elements is dispositive of the entire claim, a court need not analyze the elements in any particular order. Failure to satisfy one element is dipositive.

***Commonwealth v. Hairston***, 249 A.3d 1046, 1061–1062 (Pa. 2021)

(internal citations omitted).

We have further explained:

A claim has arguable merit where the factual averments, if accurate, could establish [grounds] for relief. ***See***

*Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, [whether the unchosen alternative] offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.[3]

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

_____

[3] More specifically, our Supreme Court has determined:

Before a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect defendant's interests. Thus, counsel's assistance is deemed constitutionally effective once we are able to conclude the particular course chosen by counsel had some reasonable basis designated to effectuate his client's interests. **The test is not whether other alternatives were more reasonable**, employing a hindsight evaluation of the record.

*Commonwealth v. Dunbar*, 470 A.2d 74, 77 (Pa. 1983) (internal citations omitted) (emphasis added); *see also Commonwealth v. Rollins*, 738 A.2d 435, 441 (Pa. 1999) ("[W]e do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis.").

***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (some

quotations and citations omitted).

Before addressing the merits of the individual claims, the PCRA court

generally examined all of Appellant's overarching PCRA issues and initially

determined:

> [Appellant's] claims of ineffectiveness relate to [trial counsel's] approach to attacking Victim's credibility. Specifically, [Appellant] argues [trial counsel] should have (a) introduced evidence of Victim's reputation for untruthfulness; (b) introduced and exploited material inconsistencies in Victim's trial testimony; and (c) introduced evidence to show Victim bore ill-will toward [Appellant] because [Appellant] discovered Victim's inappropriate relationship with a young man[,] and along with [Mother], disciplined Victim as a result. [Appellant] claims these errors, considered individually and cumulatively, warrant a new trial.
>
> [Appellant's] allegations of ineffectiveness arise from his dissatisfaction with [trial counsel's] strategic decision to show Victim's allegations were "objective[ly]" improbable in the circumstances of this case. At the PCRA hearing, [trial counsel] explained her opinion that "[] sexual assault was unlikely" due to the small size and high occupancy of [Mother's] residence and the sheer number of incidents alleged. To [trial counsel], it was inconceivable that this much sexual contact had happened with so many people in the house and in the bed next to where [Mother and Victim's little brother] slept." Recognizing the importance of "a light touch with [child] victims" in sexual assault cases, [trial counsel] opted "to present evidence of surrounding circumstances to impeach" Victim's credibility instead of directly calling the victim a liar." [The PCRA court] review[ed] the trial court record [and] indicate[d that trial counsel] ably implemented this strategy. [Trial counsel] cross-examine[d] Victim regarding the size, occupancy and arrangement of [Mother's] apartment. [Trial counsel] argue[d] in closing that the circumstances of the case, including the layout and occupancy of the apartment, cast doubt on the veracity of Victim's allegations.

Having reviewed the gist of [trial counsel's] trial strategy, [the PCRA court also] analyze[d Appellant's] specific claims of ineffectiveness [and determined that these claims did not merit relief].

PCRA Court Opinion, 3/2/2022, at 3-4 (record citations and original brackets omitted; parentheticals incorporated).

In his first issue presented, Appellant contends that trial counsel was ineffective for failing to illicit testimony from Victim's mother, a trial witness for the defense, that Victim had a reputation in the general community for untruthfulness pursuant to Pa.R.E. 608(b).[4]  Appellant points out that on direct examination and upon objection by the Commonwealth, the trial court told the jury to disregard testimony from Victim's mother when she unilaterally stated, "She lies" when referring to the Victim.  Appellant's Brief at 23.  Appellant acknowledges that opinion testimony from Victim's mother was inadmissible under Pa.R.E. 608 but instead argues that trial counsel was ineffective for failing to introduce character evidence for Victim's general reputation in the community for untruthfulness.  *Id.* at 25-27.  Appellant

_____

[4]   Pennsylvania Rule of Evidence 608 provides, in pertinent part:

(a)   Reputation Evidence. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked. Opinion testimony about the witness's character for truthfulness or untruthfulness is not admissible.

Pa.R.E. 608(a).

claims that there is arguable merit to his ineffective assistance of counsel claim because evidence of Victim's reputation for untruthfulness "would have been admissible under Pa.R.E. 608(a) and would have been compelling testimony from her own mother[.]" *Id.* at 27. Appellant further asserts that "[t]here was no reasonable basis for trial counsel to have failed to introduce this character evidence; there was no downside to presenting evidence of [Victim's] untruthfulness, which would have been all the more compelling coming from the [V]ictim's own mother, who was not only in the best position to know her daughter's reputation [] for dishonesty, but would also be someone who would have a natural bias in her favor." *Id.* at 28. Appellant argues that "[t]he prejudice here was particularly acute because the prosecution rested on the credibility of a single witness, [Victim], which was presented without any other corroborating evidence of any kind from any source." *Id.* at 33. Finally, on this issue, Appellant assails the PCRA court's determination that trial counsel could not have been expected to present reputation evidence because such evidence lacked foundation or was unknown to counsel. According to Appellant, Victim's mother "informed trial counsel *prior to trial* that she felt her daughter was 'a liar' and trial counsel herself admitted that she had received information of [Victim's] negative reputation for honesty from [M]other." *Id.* at 30 (emphasis in original).

On this claim, the PCRA court opined:

[Appellant's] first argument lacks arguable merit. [Appellant] cite[d] no binding authority to support his argument that defense counsel had a duty to investigate the character of a

- 8 -

complainant in a child sexual abuse case, particularly when, as here, the defense elected to present objective evidence that cast doubt upon the plausibility of the assault allegations. [Appellant] also fail[ed] to account for the strong possibility that the jury would have reacted negatively to an overt declaration by [Mother] that [Mother] chose to believe the account of her boyfriend over that of her own biological daughter.

[Appellant's] first issue also lacks support in the record. [Trial counsel] testified at the PCRA hearing that [Mother] never informed her of Victim's [poor reputation for] truthfulness even though [trial counsel] and [Mother] spoke for "a couple of hours" before trial. Rather, [Mother] only stated that she and [Appellant] regarded Victim as a liar, it was only at the PCRA hearing that [Mother] testified to Victim's poor reputation in the community for truthfulness. Moreover, [trial counsel] was aware that Victim's grandmother, with whom Victim lived [at the time of trial,] believed Victim's allegations. Thus, [trial counsel] did not present reputation evidence because she "didn't have any information based on her discussions with [Mother] that did lay an appropriate foundation" to introduce such evidence. Therefore, the [PCRA c]ourt [found] that [Appellant's] first argument [did] not present an issue of arguable merit because [trial counsel] could not have been expected to present evidence when she was justifiably unaware of the foundation for the same.

PCRA Court Opinion, 3/2/2022, at 5-6 (citations, original brackets, and parentheticals omitted).

We agree with the PCRA court that this claim merits no relief. Trial counsel testified at the PCRA hearing that she "didn't have any information based upon [her] discussions with [Mother]" that Victim had a reputation for untruthfulness. N.T., 10/19/2021, at 43. Trial counsel testified that she did not know "that anybody else other than [Mother] and [Appellant] thought [Victim] was a liar." *Id.* at 41. Trial counsel was unsure that reputation evidence from Mother would have been beneficial to Appellant's trial. *Id.*

("I don't know if I would want that reputation evidence from her mother."). Trial counsel also testified that she knew that Victim went to live with her grandmother after Victim reported the abuse and that Victim's grandmother believed Victim was truthful. *Id.* at 41-43. Moreover, trial counsel determined that it was "better to present evidence of the surrounding circumstances [to] impeach the child's credibility rather than [] directly calling the victim a liar" because trial counsel believed "that attacking [] credibility should not be done directly and harshly with a child." *Id.* at 40. Instead, trial counsel opined that it was better to "actually use an objective determination for why [] sexual assault was unlikely" because, to trial counsel, it was "inconceivable [...] sexual contact happened with so many people in the house and in the bed next to where her mother slept [with Victim's younger] brother." *Id.*

Examining the certified record and applicable law, we conclude that trial counsel employed a reasonable trial strategy, which avoided the introduction of Mother's testimony about Victim's reputation in the community for untruthfulness. This strategy was not so unreasonable that no competent lawyer would have chosen it. Trial counsel made an informed choice which, at the time the decision was made, reasonably considered and attempted to advance and protect Appellant's interests. Thus, we deem counsel's assistance constitutionally effective after concluding the particular course chosen by counsel had some reasonable basis designated to effectuate Appellant's interests. As set forth above, we are simply not

permitted to employ hindsight in evaluating whether other alternatives were more reasonable.

Finally, we conclude that presenting evidence that Victim had a reputation for untruthfulness would not have offered Appellant a significantly greater chance of success and Appellant has not demonstrated prejudice. The jury observed Mother testifying for the defense and the Commonwealth referenced that fact in closing when it argued that "Mother no longer resides with her daughter[, Victim,] but has continued to talk to and engage in a relationship with the man [who] alleged[ly] abused her" and "[c]learly, [Victim's] mother doesn't believe her." N.T., 6/6/2019, at 144-146. As such, the jury was aware that Mother believed Victim was untruthful. Having found that trial counsel had a reasonable basis for not eliciting reputation evidence about Victim under Pa.R.E. 608, Appellant's first issue merits no relief.

In his second issue presented, Appellant argues that trial counsel was ineffective for failing to attack Victim's credibility by introducing inconsistencies in her trial testimony. Appellant's Brief at 34-35. Appellant claims that Victim testified regarding the last instance during which she engaged in oral sex with Appellant and claimed that the abuse stopped because her "mom kind of figured it out." *Id.* at 34 (record citation omitted). Appellant asserts that trial counsel was ineffective for failing to elicit contradictory testimony from Mother in order to question Victim's credibility. *Id.* at 35-36. In a somewhat related sub-issue, Appellant also

maintains that trial counsel was ineffective for failing to challenge Victim's credibility by highlighting "inconsistent exaggerations" between her trial testimony and "what she had previously claimed when interviewed by [the Children's Advocacy Center ("CAC")]." *Id.* at 36-37. More specifically, Appellant contends that Victim testified at trial that Appellant performed oral sex on her "more than ten" times on her bed and "more than ten times" on Mother's bed over the course of approximately two years, but told authorities in an initial interview that she could not say how many times Appellant performed oral sex upon her except that it was "more than once" or "a couple of times." *Id.* at 37-38. Appellant claims that "there could be no strategic, tactical or other reason for [trial counsel] *not* to have politely cross-examined [Victim] on those glaring, substantial and material inconsistencies between her statements and trial testimony" or "*not* to have elicited from mother the testimony that she was never aware of any sexual relations between her daughter and Appellant[.]" *Id.* at 43 (emphasis in original). Appellant argues that he was prejudiced because "the jury may well have disregarded the entirety of [Victim's] allegations of sexual activity and acquitted Appellant on every count." *Id.* at 44.

On these claims, the PCRA court determined:

[Trial counsel] made a reasonable strategic judgment not to impeach Victim using Victim's inconsistent statements regarding the number of times oral sex occurred. [Trial counsel] testified that, after reviewing the CAC interview in which Victim disclosed [Appellant's] abuse, she "didn't see the basis for impeaching Victim." In addition, [trial counsel] made the sound judgment that "attacking [Victim's] credibility should not be done directly

and harshly" because of Victim's youth. [Trial counsel] had a reasonable basis to impeach Victim's credibility by "presenting evidence surrounding the circumstances that" cast doubt upon Victim's version of events.

\*     \*     \*

The record reflects that, in the circumstances of the case, [trial counsel] made a reasonable strategic judgment not to conduct a more aggressive cross-examination of Victim. Thus, [Appellant] has not met his burden to show [trial counsel] lacked a reasonable basis for her cautious approach to impeaching Victim.

In addition, [the PCRA c]ourt reject[ed Appellant's] claim that [trial counsel] should have presented evidence from [Mother] contradicting Victim's statement that [Mother] "figured… out" that abuse was occurring. The record shows [that trial counsel] elicited testimony from [Mother] establishing that [Mother] never witnessed or suspected abuse. Nevertheless, [Appellant] complains [that trial counsel] should have elicited testimony by [Mother] that specifically contradicted Victim's statement that [Mother] "figured …  out" that abuse was occurring. However, [Appellant] cannot carry his burden to show a reasonable probability of a different trial outcome had [trial counsel] taken the course of action [Appellant] now suggests. Accordingly, [Appellant's] argument fails because [Appellant] cannot prove he was prejudiced by [trial counsel's] direct examination of [Mother].

PCRA Court Opinion, 3/2/2022, at 6-7 (record citations, some legal citations, and original brackets omitted).

Upon review, including a review of the CAC interview with Victim,[5] we agree that Appellant is not entitled to relief on his second appellate issue. In

---

[5] Appellant filed a supplemental record with this Court which contained a physical copy of the interview. We note, however, that there were multiple, disjointed and sometimes incomplete recordings of the interview on the DVD supplied. However, we were able to obtain the information necessary to
*(Footnote Continued Next Page)*

the CAC interview, Victim described the manner and frequency with which Appellant performed oral sex upon her. She claimed Appellant took her pants off and used his tongue on her vagina. Victim told the CAC interviewer that it had happened "before" and "more than once." Victim stated that the abuse occurred on a couch in the living room, in Mother's room, and in her brothers' room. At trial, Victim testified regarding a specific incident of oral sex in her brother's bedroom. *See* N.T., 6/6/2019, at 47. She also testified that, over the course of approximately a year and a half, Appellant performed oral sex upon her "more than ten" times on her bed and "more than ten" times on her Mother's bed. *Id.* at 50. At the PCRA evidentiary hearing, trial counsel believed that she "didn't have the basis" to impeach Victim because the CAC and trial statements were not inconsistent. N.T., 10/16/2021, at 44; *see also id.* at 57 ("The CAC interviews are what [trial counsel] use[s] for impeachment" and trial counsel "didn't see the substance for impeachment.").

We agree. In her CAC interview, Victim initially said that Appellant performed oral sex upon her "before" and that it was "more than once." At that time, however, she did not offer a specific number of times that the abuse occurred. At trial, Victim testified that oral sex occurred "more than ten" times. This testimony did not contradict the answers Victim provided in

*(Footnote Continued)* ─────────────

complete our review. Unfortunately, we are unable to provide accurate timestamped citations to the supplemental record.

- 14 -

her prior CAC interview. Therefore, it was reasonable for trial counsel to not use the CAC interview in an effort to impeach Victim's trial testimony on the basis of alleged inconsistencies. Moreover, while trial counsel did not specifically question Mother about whether she had "figured out" that abuse was occurring, such questioning would have been merely cumulative of Mother's testimony that she was not aware of any inappropriate touching between Appellant and Victim despite what she described as an open line of communication between herself and Victim. *See* N.T., 6/6/2019, at 106-107. Trial counsel made reasonable decisions to advance and protect Appellant's interests and was not so unreasonable that no competent lawyer would have chosen the same defense. As such, Appellant's second issue fails.

In his third issue, Appellant claims that trial counsel was ineffective for failing to develop and present a motive for Victim to falsely claim that Appellant abused her based upon evidence that Appellant discovered photographs of a naked young man on Victim's cellular telephone. Appellant's theory is that Victim made false accusations against him as revenge for punishment he imposed upon her. Appellant's Brief at 45-59. More specifically, Appellant avers:

> At one point, Appellant discovered photos of a young man – identified as "T-Bone" – on [Victim's] phone, some of which were overtly sexual in nature. Appellant brought this to the attention of [M]other. (Appellant testified [at the PCRA hearing] that he actually showed the pictures to [M]other before they were deleted by [V]ictim; [M]other testified [at the PCRA hearing] that although [Appellant] advised her of the pictures, she didn't

- 15 -

actually see them.) They were then able to access T-Bone's profile on Facebook on [Victim's] phone. It was [later discovered that Victim was with T-Bone during an out-of-town weekend trip to the home of Victim's friend.] When [Victim] sought to take another such trip where he would be, she was prohibited from going; as a result, she became explosive about it in an angry, disrespectful way towards [Appellant] and [Mother].

Shortly thereafter – [two] or [three] weeks – [V]ictim made her accusations against Appellant.

At the PCRA hearing, both Appellant and [M]other testified that before trial, they had informed trial counsel of the matters concerning the cellphone discovery of naked pictures of T-Bone and the disciplinary measures taken and the resultant anger of [Victim]; trial counsel also acknowledged that both of them had separately advised her of this matter, consistent with their testimony. However, [trial counsel] stated at the PCRA hearing that she was unable to find anything on social media regarding T-Bone so in light of that [she] thought this [issue] just sort of fizzled out[.] She acknowledged that this evidence related not just to discipline of [Victim …] and that it would have been a legitimate defense. But [trial counsel] didn't think there was enough substance there to use it.

*Id.* at 46-48 (record citations, quotations, and original ellipses omitted).

Appellant claims that trial counsel was ineffective for failing to use the information "to cross-examine [Victim], and through the testimony of Appellant and [M]other at trial to show [Victim's] ill will toward Appellant and as motivation for making false claims against him." *Id.* at 49-50. Appellant argues that the evidence is admissible under Pa.R.E. 404(b)(1), pertaining to prior bad acts, and not in violation of Pennsylvania's Rape Shield Law. *Id.* at 50-59.

On this issue, the PCRA court decided:

At the PCRA hearing, [trial counsel] testified that, after investigation, she believed the objective defense presented at

- 16 -

trial was stronger than a defense based on the theory that Victim falsely accused [Appellant] because he imposed discipline over her relationship with [a young man]. [Trial counsel] discussed [the alleged relationship] with both [Appellant] and [Mother] and learned that Victim had allegedly received a photograph of [the young man's] genitals on her cell[ular tele]phone. However, only [Appellant] reported seeing the explicit photograph to [trial counsel]. [Trial counsel] also testified that she had been unable to locate [the young man] on social media. Accordingly, [trial counsel] made a reasonable strategic decision that the objective defense actually presented at trial was "a better, … more substantive defense" than a defense requiring discussion of Victim's [alleged] relationship[.] [Appellant] has not shown that the presentation of the defense requiring discussion of Victim's relationship with [the young man] offered a potential for success substantially greater than the course actually pursued, so his third argument failed the reasonable basis prong of the ineffectiveness test.

PCRA Court Opinion, 3/2/2022, at 8-9 (citations, original brackets, and some quotations omitted).

At the PCRA evidentiary hearing, Appellant testified that he purchased Victim a cellular telephone. N.T., 10/16/2021, at 28. He claimed that he saw three photographs of a young man with his genitals exposed on Victim's cellular telephone. *Id.* at 27. Appellant told Mother about the alleged photographs. *Id.* at 28. Mother testified, however, that she did not see the photographs exchanged between Victim and the young man, described only as "T-Bone Rivera." *Id.* at 10-11. Appellant claimed that Victim deleted the photographs, Appellant did not save the photos, send them to his cellular telephone, or keep Victim's cellular telephone. *Id.* at 36. Trial counsel testified that, in preparing Appellant's defense, she met with a member of her staff and Mother "and tried to find this guy T-Bone Rivera on

social media and [] couldn't find anybody that [] met [his] description[,]" so it "just sort of fizzled out[.]" *Id.* at 49. Ultimately, trial counsel testified:

> [Appellant] told me that he had seen this picture and he had shown it to [Mother], [Mother] had not seen it. We were speculating as to who this T-Bone Rivera was. We were trying to find him on social media. But it just seemed like it was a rabbit hole and not worth pursuing.

*Id.* at 56.

Based upon the evidence available to trial counsel at the time, she made a reasonable decision not to pursue a defense that Victim retaliated against Appellant by falsely reporting abuse after he allegedly discovered naked photographs of a young man on her cellular telephone.[6] Aside from Appellant's bald allegation of Victim's alleged motive to seek revenge there was simply no evidence to support Appellant's claim. Appellant and Mother do not dispute that trial counsel attempted to locate this young man on social media to no avail. At trial, counsel advocated a retaliation defense by eliciting testimony from Victim showing that Appellant imposed discipline upon her, that Victim did not like it, and that she repeatedly told Appellant that he was not her father. N.T., 6/6/2019, at 77-78. In light of all of the foregoing, we deem trial counsel's actions to be reasonable in light of the

_____

[6] We note that Appellant does not contend that trial counsel was ineffective for failing to call the young man as a trial witness, for failing to obtain the Victim's telephone records, and/or failing to conduct a more extensive forensic search of Victim's cellular telephone for the purportedly deleted naked photographs.

evidence available to her at the time of trial. Appellant has not offered a potential for success substantially greater than the course actually pursued by trial counsel.

Finally, Appellant argues that the cumulative effect of trial counsel's errors prejudiced him, and, therefore, he is entitled to a new trial. Appellant's Brief at 59-63. Our Supreme Court has repeatedly held that "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009) (citation and internal brackets omitted). It is only "[w]hen the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed." *Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011). Having determined that trial counsel had a reasonable basis for each of Appellant's individual allegations of ineffective assistance of counsel, those issues may not collectively warrant relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/28/2022